Michael SALIMA and Annette Salima, Plaintiffs–Appellants,

v.

SCHERWOOD SOUTH, INCORPORAT-ED, an Indiana Corporation, Scherwood Golf Concessions, Incorporated, an Indiana Corporation and Northern Indiana Public Service Company, an Indiana Corporation, Defendants–Appellees.

No. 94–1482.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1994.

Decided Oct. 26, 1994.

Saul I. Ruman, Ruman, Clements & Tobin, Hammond, IN, Frank C. Marino (argued), and Eugene I. Pavalon, Pavalon & Gifford, Chicago, IL, for plaintiffs-appellants.

Lester F. Murphy (argued), Burke, Murphy, Costanza & Cuppy, Palm Harbor, FL, for defendants-appellees.

Before LAY,* BAUER, and WOOD, Jr., Circuit Judges.

BAUER, Circuit Judge.

Michael Salima filed this lawsuit seeking damages for personal injuries that he sustained while working on the defendants' premises. The district court granted the defendants' motion for summary judgment. Salima appeals this decision, and we affirm.

## I.

Scherwood South and Scherwood Golf Concessions (collectively referred to as "Scherwood") are Indiana corporations which between them own and operate the golf course, restaurant, swimming pool and parking lot at the Scherwood Country Club in Schererville, Indiana. The majority of both corporations is owned by Marvin Hanson who, along with his brother Ron, manages the Club on a day-to-day basis. Salima, an Illinois resident, was a friend of the Hanson brothers and occasionally did repair work around the Club for them.

In the parking lot of the Club, affixed to three poles, were three floodlights. One of those lights was connected to a timer located on another pole. Upstream from the timer, on the same pole, was a switchbox which controlled the power going into the timer. Upstream from the switchbox near the top of the pole was a transformer.

Sometime before Salima's injury, installation of underground water pipes for an adjacent home development caused the wires

---

* The Honorable Donald P. Lay, Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

connecting the timer on one pole to the light on the other pole to be severed. The severed wires were subsequently spliced and taped together and left protruding from a large hole in the ground; nevertheless, it was discovered that the timer-activated light was not working properly.

The Hanson brothers first asked Joseph Jayjack, a Scherwood employee, to see if he could discover what the problem with the light was. His investigation revealed that there was power coming into and leading out of the timer, but no power at the area of the spliced wires. Not being an electrician, he decided to consult with a friend who was experienced in such matters before doing anything further.

The next day, Marvin Hanson asked Salima, who was on the premises doing other repairs, to see if he could determine what was wrong with the parking lot light. He did not inform Salima about Jayjack's inspection. Upon arriving at the parking lot, Salima measured the voltage at the timer and found no power there. He noticed that protruding from just below the transformer, about eighteen feet above the ground, was a group of wires that led into a conduit attached to the pole and running into the switchbox. Suspecting that therein was the problem, Salima borrowed a ladder from Ron Hanson who had since arrived on the scene. Salima climbed the ladder and, upon coming into contact with the wires, was electrocuted, and fell from the ladder, severely and permanently injuring himself.

Salima filed a negligence action against Scherwood South and Scherwood Golf. Finding that Salima sustained his injuries while performing the duties which he was hired to do and that the Hansons did not breach their duty to Salima, the court granted the defendants' motion for summary judgment.

## II.

◼ The decision to grant or deny summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure which states that summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review the district court's decision *de novo*, drawing all inferences from the record in a light most favorable to the non-moving party. Where there are genuine disputes of material fact, resolution is capable only through trial, and summary judgment is, therefore, inappropriate.

◼ The parties correctly contend that Indiana law governs this case. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987) (Absent a more substantial connection elsewhere, Indiana's choice-of-law rules make the place of injury dispositive). To succeed on a negligence action in Indiana, a plaintiff must prove: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff that was proximately caused by the defendant's breach of duty. *Northern Indiana Pub. Serv. Co. v. East Chicago Sanitary Dist.*, 590 N.E.2d 1067, 1072 (Ind.Ct. App.1992). As in most jurisdictions, the extent of a landowner's duty to an entrant is dictated by the status of the entrant. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991). The parties agree that Salima, as an independent contractor, was a business invitee.

◼ A landowner's duty to an invitee while that invitee is on the premises is that of reasonable care. *Id.* While a landowner is not under a duty to provide an independent contractor with a safe workplace, landowners must warn independent contractors of latent or concealed perils on the premises. *McClure v. Strother*, 570 N.E.2d 1319, 1321 (Ind.Ct.App.1991). Despite the existence of a duty extending from Scherwood to Salima, the district court found that in the absence of a factual issue concerning breach of this duty, summary judgment was appropriate. We agree.

Salima contends that Scherwood breached its duty to him because the Hanson brothers neglected to inform him: (1) about the severed and spliced wires running between the poles; (2) that Ron Hanson had shut off the power going into the timer; and (3) of Jayjack's inspection and decision to consult with his friend. Salima contends that had he been told of any of these facts, he would not have

climbed up the pole and inspected the transformer.

▮▮▮ As stated by the Supreme Court of Indiana, a landowner is liable for harm caused to an invitee by a condition on the land only if the landowner: (1) knows of or through the exercise of reasonable care would discover the condition and realize that it involves an unreasonable risk of harm to such invitees; (2) should expect that the invitee will fail to discover or realize the danger or fail to protect against it; and (3) fails to exercise reasonable care in protecting the invitee against the danger. *Douglass v. Irvin,* 549 N.E.2d 368, 370 (Ind.1990) (quoting Restatement (Second) of Torts § 343 (1965)). A landowner is not liable for harm caused to invitees by conditions whose danger is known or obvious unless the landowner could anticipate the harm despite the obviousness. *Id.* Hence, a determination of whether a landowner breached his duty of care to an independent contractor centers on an objective evaluation of the landowner's knowledge. *Id.*

▮▮▮ Even when construed in a light most favorable to Salima, the facts on record do not suggest either that the Hansons should have known that they were exposing Salima to an unreasonable risk of harm or that the Hansons should have known that Salima would not realize the dangers inherent in electricity. Evidence of the excavation and the severed wires was apparent. In their depositions, Marvin Hanson and Joseph Jayjack both testified that the severed wires had been spliced and taped together and that the wires protruded from the ground where the effects of the digging were still evident. Even though the spliced wires and the excavated area were visible, Salima chose instead to first check the timer. Finding no power at the timer, he concluded that the problem had to be somewhere upstream of the timer. This, and not his ignorance of the spliced wires, led him to inspect the transformer.

▮▮▮ As for the power going into the timer, Ron Hanson admitted to turning off the power around the time of the excavation, approximately three weeks prior to the accident. Jayjack's testimony, however, establishes that in his inspection, he detected power in the timer, which indicates that the power had since been turned on. Moreover, the existence of power running into the timer was easily ascertainable. The power switch was located adjacent to the timer and was also visible to Salima during his inspection. Hanson's failure to inform Salima that he had turned off the power in the switchbox three weeks before did not, therefore, constitute a breach of the duty of care.

Left for our consideration, then, is whether the Hanson brothers' failure to inform Salima of Jayjack's inspection constituted a breach of their duty to Salima. Salima does not contend that there was anything defective in the transformer. His argument, rather, is that based on Jayjack's investigation, the Hansons knew, or at least should have known, that the problem with the light was not in the transformer. By failing to inform Salima of this, Salima concludes, the defendants breached their duty of care.

▮▮▮ The evidence, however, does not support such a conclusion. Jayjack's inspection provided the Hansons with little insight as to dangers in the transformer or any other potentially harmful conditions on their property. Jayjack discovered only that there was power at the timer but no power in the spliced lines connecting the timer and the light. He could not, ultimately, provide any reliable reasons for what was causing the problem. Consequently, when Marvin Hanson asked Salima to take a look at the light, neither Marvin nor Ron Hanson was any more aware that the problem with the light was not located in the transformer. The peculiarity of the problem was reinforced by Salima's own determination based on volt readings taken near the timer, that the problem was in the circuit connecting the transformer to the timer switch.

Furthermore, nothing in the record demonstrates that the Hansons should have anticipated that Salima would fail to appreciate the dangers inherent in examining high voltage electrical wires. Although he was not an electrician, he did possess some knowledge about electrical wiring, and, as he testified in his deposition, he certainly was aware of the dangers posed by the high voltage in the wires around the transformer. The unclear

findings in Jayjack's earlier inspection did not make it any less likely that Salima would not have taken the proper precautions in inspecting the light pole. The condition which caused Salima's injury, electricity, is inherently dangerous, but in this case, its danger was sufficiently obvious and recognizable that the Hansons should have been able to rely on Salima to guard against the danger.

We believe that the Hanson brothers were not aware of anything about their property which made it incumbent upon them to warn Salima about the dangers involved in electrical wiring. We also find no evidence indicating that it was unreasonable for the Hansons to expect that Salima would take proper precautions in examining the parking lot light. We, therefore, conclude that there is no genuine factual issue as to the defendants' breach of duty.

### III.

We are not insensitive to Michael Salima's injury. It was indeed an unfortunate and tragic event. There is nothing, however, in the pleadings or documents on file which suggests that the Hanson brothers failed to meet the standard of care owed to Salima. The decision of the district court, granting the defendants' motion for summary judgment, is, therefore,

AFFIRMED.