Michael SHANAHAN, Plaintiff,

v.

CITY OF CHICAGO, Richard M. Daley, Mayor, both individually and in his official capacity as Mayor, Raymond Orozco, both individually and in his official capacity as Fire Commissioner, and William Alletto, Defendants.

No. 91 C 2865.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 14, 1995.

James P. Chapman, James P. Chapman and Associates, Ltd., Alan S. Mills, Chicago, IL, for plaintiff.

Kelly Raymond Welsh, Nancy L. Van Allen, Mary Leone Smith, Patrick J. Rocks, Jr., City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for City of Chicago.

Kelly Raymond Welsh, Nancy L. Van Allen, Mary Leone Smith, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for Richard M. Daley, Raymond Orozco, William Alletto.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

### FACTS [1]

Plaintiff Michael Shanahan brought this action pursuant to 42 U.S.C. § 1983 and the consent decree entered in *Shakman v. Democratic Org. of Cook County*, 481 F.Supp. 1315, 1356–59 (N.D.Ill.1979) ("*Shakman* decree") alleging that he was demoted in viola-

---

1. The facts are taken from the parties submissions pursuant to Local Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois.

tion of the First and Fourteenth Amendments and the *Shakman* decree. Shanahan contends that he was demoted because he refused to hire machinists who were allegedly political supporters of Mayor Richard M. Daley. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

Defendant City of Chicago (the "City") is a municipal corporation and Defendant Richard M. Daley ("Daley") is its Mayor. Defendant Raymond Orozco ("Orozco") is the Fire Commissioner of the Chicago Fire Department ("CFD"). Defendant William Alletto ("Alletto") is the Deputy Fire Commissioner of the CFD. Alletto overseas the Bureau of Support Services, which includes the Division of Apparatus Maintenance, Repair, and Supply.

The City hired Plaintiff Michael Shanahan ("Shanahan") as a Fire Fighter in December 1965. He was promoted to Lieutenant in 1980 and appointed Director of Apparatus Maintenance, Repair, and Supply ("Director") in March 1983. To accept this position, Shanahan took a leave of absence from his career service position as a Lieutenant. As Director, Shanahan was head of the Fire Department's central equipment repair facility (the "Shops"). He supervised over one hundred employees, both uniformed and civilian. The civilian employees included workers of various trades such as machinists, carpenters, blacksmiths, electricians, and clerical staff. However, he did not have the final authority to hire employees, but merely recommended to the Commissioner applicants he thought should be hired. Shanahan Aff. ¶ 15. It is clear that Shanahan did not have decision making authority on hiring. The fact that his recommendations had been routinely accepted in the past is meaningless. Thus, the demands of his superiors to hire the machinists in question were in actuality demands to perform the ministerial tasks required to do so. While he was Director, Shanahan reported to the Alletto, and Alletto reported to Orozco.

In 1990, there were job openings for machinists at the Shops. Kenneth Estrella ("Estrella"), Joseph DeLira ("DeLira"), and

Stanislaw Slodyczka ("Slodyczka") saw union bid announcements for the positions posted and applied for the positions. All three men were employed by the City Department of General Services as automotive machinists and were members of Local 126 Machinists Union ("Local 126" or the "Union"). After filling out and submitting bid applications describing their training and experience, the City's Department of Personnel determined that the three men were eligible for the vacancies.

Shanahan did not recommend that Estrella, Delira, and Slodyczka be hired because he thought that they were not qualified. In May 1990, they filed grievances with Local 126. Tom Faul ("Faul"), a Union official, brought the grievances to the attention of the Director of Labor Relations for the City Department of Personnel, Joan Cole. She investigated the grievances and determined that they were meritorious.[2] In addition, the Union also brought them to the attention of Michael Broderick ("Broderick"), who was then the Assistant Director of Intergovernmental Affairs.

In June 1990, Shanahan met with Broderick and John Doerrer, the Director of Employment Relations with the Department of Personnel. Defendants contend that at that meeting Broderick informed Shanahan that under the collective bargaining agreement, the three grievants should be hired. Shanahan contends that he was not informed of the grievances at the meeting. The parties agree that at the meeting Broderick told Shanahan that he should inform Broderick of openings at the Shops and that Broderick would give him the names of persons who should be placed in the open positions.

After the meeting, Shanahan told Orozco what Broderick had said to him. Orozco told Shanahan that he should continue running the Shops as he had in the past and let Orozco take care of any problems with Broderick. In September 1990, Broderick called Shanahan and instructed him to hire Estrella, DeLira, and Slodyczka for the positions that were still open. Shanahan refused.

---

2. These facts are properly supported by affidavits. Shanahan does not cite to any material supporting his denial of them. They are, therefore, admitted.

A few weeks later, Orozco and Alletto visited Shanahan at the Shops and told him the "higher-ups" "downtown" wanted his job. Orozco said that it was a "political thing" and that he should try and get someone, perhaps his ward committeeman, to help him. A week later, Alletto returned to the Shops with a letter of resignation and asked Shanahan to sign. Shanahan refused. A few days later Orozco asked him to resign, Shanahan refused a second time to resign. Orozco then instructed him to take a leave of absence and not to worry about the matter. Shanahan was subsequently demoted back to Lieutenant's rank and transferred to the field near the end of 1990.

Early in January 1991, the Union posted notices of vacancies for mechanics at the Shops. Estrella, DeLira, and Slodyczka were hired. Twelve other bids were posted for the positions, all were members of Local 126.

The only persons Shanahan claims were referred to him for hire based on their political loyalty to Daley are Estrella, DeLira, and Slodyczka. Neither Estrella nor Slodyczka was involved in any way with Daley's election campaigns. Neither has ever been involved in any political campaigns nor ever engaged in any political activities other than voting. In addition, DeLira was not involved Daley's election campaign and has not engaged in any political activity since 1983. Neither Broderick nor Orozco has knowledge of the political beliefs or affiliations, if any, of Estrella, DeLira, or Slodyczka.

Shanahan denies this fact without citation to proper supporting authority. It is, therefore, admitted. He asserts that Broderick knew that Estrella, DeLira, and Slodyczka were members of Local 126 which is part of the 226 unions comprising the Chicago Federation of Labor. The Chicago Federation of Labor supported Daley's election. In addition, he states, and Defendants admit, that the Local 126 has close ties with Daley through Faul. Shanahan contends that Estrella, DeLira, and Slodyczka's political affiliation with, and support for, Daley can be deduced from their membership in Local 126. He cites no authority for this position, and the court does not accept it merely on the basis of his assertion.

The leadership of Local 126 also had close ties through Faul with Richard J. Daley, formerly the Mayor of Chicago. Mayor Richard J. Daley died in 1976. Local 126 consistently supported City candidates nominated by the Regular Democratic Party of Cook County and gave financial contributions to the Party and Daley's campaign.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir. 1994); *Transportation Communications Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994) (per curiam). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994), nor will some metaphysical doubt as to the material facts suffice. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, the non-moving party is required to go beyond the pleadings with affidavits, deposi-

tions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The court finds that there are no genuine issues as to any material facts, hence, summary judgment is granted.

In a case where the plaintiff is asserting his own First Amendment rights, to establish a First Amendment claim in an employment context, he must present evidence that his speech or conduct was constitutionally protected, and that the protected speech or conduct was a substantial factor in his demotion. *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992). The same standard applies to claims under the *Shakman* decree.[3] *McGuire v. City of Chicago,* 592 F.Supp. 56, 58 (N.D.Ill.1984). Once a plaintiff shows this, the burden switches to defendant to show it would have made the same decision notwithstanding the protected conduct. *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992). Here, Shanahan is asserting that his demotion was not a result of his own political associations.[4] He is asserting that his demotion was due to his refusal to hire job applicants merely because they were political supporters of Daley. Thus, he is asserting the First Amendment rights of other potential applicants, who are not supporters of Daley, who might have been hired had he not been pressured to hire Estrella, DeLira, and Slodyczka because of their political support for Daley. As such, Shanahan must show that the decision to demote him rested substantially on the applicants' politically loyalty to Daley.

In order to show that Defendants demoted him because of his refusal to hire the politically favored candidates, Shanahan must show that Defendants knew the political affiliations of Estrella, DeLira, and Slodyczka. *See Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992) (holding the plaintiff needed to show that the defendant

knew her political affiliations to prove political affiliation was a motivating factor in her discharge). It is clear from the parties' Local Rule 12(M) and 12(N) Statements, however, that neither Broderick nor Orozco were aware of the applicants' political beliefs or associations. Both Defendants stated in their affidavits that they had no knowledge of the applicants' political associations, and Shanahan does not counter with any evidence indicating that they did. Thus, without any evidence that Defendants knew of the applicants' political associations, Shanahan cannot show that Defendants favored them because of their political associations. Therefore, Shanahan has not presented evidence to show that his demotion was politically motivated.

In an effort to circumvent this obstacle, Shanahan attempts to amend his complaint by way of his Response to Defendants' Motion for Summary Judgment. In his Response, Shanahan argues that it was not Estrella, DeLira, and Slodyczka's politics as individuals which were the substantial factor in the decision to demote him, but rather that it was his refusal to hire three applicants from the politically connected Union which was the political motivation for his demotion. A plaintiff may not amend his complaint through arguments in its brief in opposition to a motion for summary judgment. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984) (complaint may not be amended by brief in opposition to motion to dismiss). Therefore, this argument is ineffective in forestalling summary judgment on the facts alleged in the complaint.

Furthermore, the court denies Shanahan's request, which appears in a footnote, for leave to amend the complaint at this late stage in the litigation. (Pl.'s Rsp. to Mot.Summ.J. at p. 19 n. 17) Not only does

---

**3.** The *Shakman* decree enjoined the City from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time a governmental employee, upon or because of any political reason or factor." *Shakman,* 481 F.Supp. at 1358.

**4.** Shanahan is not asserting that he was engaging in any protected speech or conduct, and is, therefore, not asserting that his First Amendment rights have been violated.

the request come too late [5] and in an improper form, but amendment allowing his new theory would be futile. *Ross v. City of Waukegan,* 5 F.3d 1084, 1088 (7th Cir.1993). Shanahan cannot make a causal connection between the alleged preference for Local 126 members and his demotion because the City was bound by the collective bargaining agreement in this situation to hire members of the Union. Shanahan admits that Local 126 has a collective bargaining agreement with the City. Under that agreement, the City is required to give first preference for hire to any person already employed in the CFD as a machinist or automotive machinist. All of these persons necessarily would be members of Local 126. Next in order of priority, the City is required to consider any person whose name is on the applicable layoff and reinstatement lists. These people would also be members of Local 126. Lastly, the City is required to take bids from machinists employed in other City departments. These people would all be members of Local 126. To hire someone who is not a member of Local 126, the City would be required to show that the person has demonstrably greater skill and ability than all the Union bidders.

At the time Shanahan was demoted, the Department of Labor Relations for the City Department of Personnel, the Union, and the Assistant Director of Intergovernmental Affairs (Broderick) thought that Estrella, DeLira, and Slodyczka were qualified for the job. The mere fact that Shanahan disagreed and thought that they were not qualified does not give rise to a reasonable inference of political favoritism. This is especially true where Shanahan did not have the actual authority to decide whether they should be hired, and where the only qualified bidders were members of Local 126.

Contrary to Shanahan's contention, the sequence of events does not give rise to any inference of political motivation. In sum, three Union members bid for positions who the City Department of Personnel found eligible. They filed grievances with their Union when Shanahan did not recommend that they be hired. The Union contacted the Director of Labor Relations who found that their grievances were meritorious. The Union also contacted Broderick, the City's liaison between elected officials and labor unions. These people determined that the City was bound by the collective bargaining agreement to hire Estrella, DeLira, and Slodyczka. The inference is that the Mayor's office was involved in handling Union grievances. Shanahan has failed to cite evidence showing that members of Local 126, or the Union itself, were in any way favored beyond its rights under the collective bargaining agreement.

■ In addition, even had Shanahan been able to present evidence that the City was politically motivated to favor Local 126 when it hired Estrella, DeLira, and Slodyczka, Defendants have presented evidence that shows the City would have hired a Local 126 member regardless of any political considerations. *Garrett v. Barnes,* 961 F.2d at 632. Shanahan has presented no evidence to the contrary.

Shanahan has not presented any evidence that at the time he refused to carry out the hiring of the candidates, that there were any other bidders for the positions who were passed up in favor of Estrella, DeLira, and Slodyczka. Nor has he presented any evidence, other than his own personal opinion, which he admits was not the final authority on who was hired at the Shops, that these men were not qualified. Thus, Defendants have shown that these men would have been hired at the time regardless of politics had Shanahan not refused to hire them.

Furthermore, when Estrella, DeLira, and Slodyczka were eventually hired off of a bid list in 1991 after Shanahan was demoted, there were twelve other bidders for the positions, all of whom were members of Local 126. Shanahan has not alleged, nor is there any evidence, that there ever were any applicants for the machinists positions who were not members of Local 126. Therefore, the City would have hired a member of Local 126 even if it did not hire Estrella, DeLira, and Slodyczka.

---

5. Discovery has been closed for more than a year and the case was filed over three years ago.

In a sur-reply brief, Shanahan admits that this is the case, but contends "that the constitutional rights of the *unqualified* candidates (Estrella) or the Union are not at stake, nor is it relevant that the applicants for the positions (whether qualified or unqualified) were drawn from the same pool— membership in Local 126. Qualified *union* members possess their own First Amendment and *Shakman* rights." (Pl.'s Rsp. to Def.'s Affirmative Defense of Qualified Immunity at p. 3) (emphasis in original). In essence, he argues that the First Amendment rights of qualified Local 126 members were somehow infringed by the hiring of all members whether qualified or not. *See id.* However, the only basis upon which he is asserting any political favoritism is manifested is on the basis of membership in Local 126, and the only First Amendment expression, if any, the job applicants are engaging in is membership in Local 126, which both qualified and unqualified are expressing equally. Consequently, hiring an unqualified Local 126 member does not impinge upon the First Amendment rights of a qualified member. Therefore, Shanahan has not presented any evidence indicating that his demotion was politically motivated, and the court concludes that there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.