George D. NEVILLE, Plaintiff,

v.

Page TRUE, Cynthia Alston, M.D., Edwin Lopez, M.D., and United States Marshals Service, Defendants.

No. 93 C 814.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 12, 1995.

---

15. The Court previously found that Tompkins was named to the director position in late July 1991. *Wagner,* 873 F.Supp. at 93.

George D. Neville, Springfield, MO, pro se.

## *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

### I. *PROCEDURAL BACKGROUND*

Plaintiff filed the instant Complaint on February 5, 1993. On August 6, 1993, Defendants filed their motion to dismiss Plaintiff's Complaint for lack of jurisdiction. On August 23, 1993, the court converted Defendants' motion to one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants were instructed by the court to file the requisite statements of material facts pursuant to Local Rule 12(M). The court also ordered Plaintiff to file his statement of material facts pursuant to Local Rule 12(N). Defendants filed their statements in a timely fashion; however, Plaintiff failed to file his requisite 12(N)

statement. After repeated extensions to Plaintiff, the court granted Defendants' motion for summary judgment on February 11, 1994. Later that month, on February 28, 1994, the court struck its judgment favoring Defendants. However, the docket sheet fails to reflect this order. Instead, the docket sheet reads that the "Court will reconsider order granting summary judgment." (Doc. # 35.) This docket entry does not accurately reflect the intention of the court to strike its earlier order. On April 25, 1994, Plaintiff filed his opposition to the motion, but did not file the statement of material facts.

At this time, the court chooses to consider the merits of Defendants' motion. Since the original judgment was withdrawn, the court uses the standard applicable to a motion for a judgment as a matter of law, pursuant to Rule 56, as opposed to a motion to reconsider pursuant to Rule 60.

## II. FACTS [1]

On February 5, 1993, Plaintiff George D. Neville ("Neville"), a *pro se* plaintiff then residing at the federal Metropolitan Correctional Center [2] ("MCC") in Chicago, Illinois, filed a complaint against Page True, the warden of MCC, Dr. Cynthia Alston ("Alston"), the Clinical Director at MCC, Dr. Edwin Lopez ("Lopez"), a Medical Officer at MCC, and the United States Marshals Service ("USMS"). In his complaint, brought purportedly under 42 U.S.C. § 1983, Neville alleges that Defendants denied him proper and adequate medical care. Neville seeks monetary damages and injunctive relief.

Plaintiff was being held at the MCC, awaiting trial for various violations of federal law including conspiracy to sell controlled substances, distribution in excess of one-and-a-half kilograms of "synthetic heroin," obtaining the "synthetic heroin" by misrepresentation, fraud and subterfuge, and employing and coercing a minor to violate drug laws. Neville was confined to the MCC as a pretrial detainee beginning on June 3, 1992.

At the time of his initial confinement, Neville had a pre-existing heart condition, poor circulation, and problems with his lower extremities. On August 1, 1992, Neville was transferred to a medical facility and treated for his maladies. After five days, Neville was returned to the MCC, where he remained pending sentencing and assignment to another correctional facility.

Neville alleges that while in pretrial detention at MCC, his legs were "bursting open," causing blood to "rush out of them." Neville further contends that Defendants refused for more than three months to administer treatment for his leg injuries. After the three months, according to Neville, Defendants finally allowed him to receive treatment from a surgeon at Hyde Park Hospital, which helped improve his condition of ill-being. He was treated there on two occasions. However, Neville asserts, Alston failed to provide sufficient "follow-up" medical treatment. Neville also alleges that the marshals would needlessly escort him to a holding cell, purportedly to wait for a physical examination, but would return him to his assigned cell when the appointments never materialized. Neville contends that he experienced physical discomfort and suffering while forced to sit on a steel bench in the holding cells and, on one occasion, fainted due to the "sick feelings." After passing out, Neville was transported to the MCC hospital. Doctor Alston administered oxygen to Neville and bandaged Neville's wrist as part of his treatment.

Neville also alleges that on another occasion, following a court appearance on August 28, 1992, he reported to Lopez.[3] According to Neville, Lopez examined him and told him that nothing could be done for him at MCC.

1. The following facts are drawn from two sources: (1) the statements of facts that Defendants submitted in compliance with Rules 12(M) of the Rules of the United States District Court for the Northern District of Illinois and the accompanying exhibits; and (2) the information contained within Plaintiff's pleadings, including written correspondence addressed to this court as well as to Judge Nordberg.

2. MCC is a federal institution under the control of the United States Bureau of Prisons.

3. Neville does not specifically mention Lopez by name. The court assumes that a reference to a male doctor contained within the Complaint is, in fact, a reference to Lopez. *See Chenh v. Logan,* 42 F.3d 1391, 1391 (7th Cir.1994) (directing trial courts to construe a *pro se* complaint liberally).

Neville contends that he tried to contact Lopez later that day, but was informed that Lopez was absent. As a result, Neville alleges that had to wait two days for rebandaging of his legs.

However, the facts show that Lopez examined Neville and explained that his leg injuries were due to a skin breakdown secondary to the decreased blood flow. This decreased flow was caused by the deteriorating condition of Neville's heart. Lopez then offered to refer Neville to a vascular surgeon or cardiologist, but Neville refused in hopes that he could get his own doctor via a court order. Two days after the examination by Lopez, Neville requested medical treatment due to his "bursting" leg veins. An in-person physical examination revealed no active bleeding or significant changes in his legs since the examination by Lopez. Therefore, the medical staff re-bandaged Neville's legs and returned him to his cell.

Neville also complains that the MCC medical staff continuously failed to provide sufficient and proper medical treatment. However, the MCC records show that the MCC medical staff examined and treated Neville's legs on 19 occasions in the first 105 days he was detained at MCC. Further, the medical staff treated or examined Neville an additional five times for shortness of breath, two times for urinary complaints, three times for dizziness, and numerous undocumented times for blood pressure checks and for other assorted complaints. Neville was prescribed many medications and underwent a great number of tests for various conditions. In addition to the treatment provided by the MCC staff, Neville was transported to and treated by three outside hospitals, namely Northwestern Hospital, Hyde Park Hospital, and Chicago Osteopathic Hospital, at which he was treated at least 16 different times.[4] Neville had the opportunity to consult with a member of the MCC medical staff four days a week for non-emergency reasons, including examination and counseling with a licensed physician approximately once a month. Moreover, MCC had a physician on staff at all times, 24 hours per day, for medical emergencies.

Additionally, MCC medical records show that Neville refused treatment on several occasions. Neville's refusal to take the prescribed medications was documented 14 times. On January 2, 1992, Neville refused to allow a member of the MCC staff to perform the daily dressing of his leg lesions. On August 1, 1992, after a suspected heart attack, Neville refused a cardiological examination while at the Northwestern Hospital. On August 3, 1992, Neville again refused treatment for his heart condition.[5]

On November 24, 1992, while at the Chicago Osteopathic Hospital, Neville refused a recommended surgery to insert a pacemaker to regulate his heartbeat, and signed a form to confirm that he refused the treatment "against medical advice."[6] Both Lopez and Alston repeatedly advised Neville that he could die if he did not undergo the surgery, but Neville continued to refuse the procedure for seven months. Neville also refused treat-

---

4. The visits to various hospitals were for urological examinations, a cardiological emergency and related examinations and testing, a CT scan of the head, general surgery, and treatment of the lesions on Neville's legs. Since the date Neville filed the Complaint, he has been evaluated and treated by MCC's in-house medical staff an additional 27 documented times. Neville was also admitted to the Chicago Osteopathic Hospital for a period of seven days, during which time he underwent extensive cardiological testing and received a pacemaker. However, Neville did not agree to receive the pacemaker until well after he filed the instant complaint.

5. Neville gave several different reasons for his refusal to have a pacemaker inserted: that he "felt fine," that he was "too busy in court," that he had to wait "until trial ends," and that the Chicago Osteopathic Hospital had "done him wrong."

6. At Neville's criminal trial, Dr. Alston testified that Neville suffered from decreased circulation caused by bradycardia, a heart condition characterized by a slow heartbeat. The condition results in numbness and tingling of the extremities and contributes to the ulceration and breakdown of the skin on plaintiff's lower legs. It was this skin breakdown that resulted in Neville's "bursting leg" complaints. Lopez further testified that the only medically-known cure for the problem is a pacemaker, a battery-driven device commonly inserted under the skin to regulate the heartbeat. Without the pacemaker, Neville's heartbeat would get progressively slower, until it eventually stopped.

ment from the Chicago Osteopathic Hospital medical staff on three documented occasions. As a result of his repeated refusals, Chicago Osteopathic Hospital discontinued treatment and care.

In addition to the documented refusal of medical care, Neville took part in self-mutilation and feigned heart attacks. Neville's cellmate observed him unraveling the bandages on his legs, and using his fingers and fingernails to scratch and open his wounds. The cellmate also witnessed Neville fake two heart attacks, each time after eating salt and other food the MCC medical staff told him not to eat.

On May 27, 1993, a federal jury convicted Neville of the aforementioned charges. On July 16, 1993, Neville finally agreed to the pacemaker insertion procedure. However, medical records evidence that Neville's heart condition substantially deteriorated during the seven-month refusal to undergo the treatment. On September 9, 1993, Neville was sentenced and is currently assigned to the Springfield Federal Medical Center in Springfield, Missouri.

### III. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir.1994). Summary judgment is not a discretionary remedy, it must be granted when warranted. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994). The moving party bears the burden of demonstrating that there is an absence of evidence to support the position of the nonmoving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 442–43 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to op-

pose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994).

A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...."). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

In addition to the above rules of law, the court is mindful that *pro se* complaints are to be liberally construed. *Chenh v. Logan*, 42 F.3d 1391, 1391 (7th Cir.1994). Complaints filed by lawyerless litigants, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). The liberal construction relates to both the *pro se* indigent plaintiff's factual allegations and its legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330–31 n. 9, 109 S.Ct. 1827, 1834 n. 9, 104 L.Ed.2d 338 (1989). However, since this motion is one for summary judgment, Neville's allegations need not be taken as true.

Although Neville brings this action pursuant to 42 U.S.C. § 1983, it is well-settled that § 1983 requires a "state actor." Such a state actor does not exist in the case *sub judice;* Neville names a federal agency and three federal employees as the defendants to his claim. Yet, despite the absence of a Congressional statute, the United States Supreme Court has specifically allowed a federal inmate to bring suit against a federal prison official for a deprivation of a constitutional right. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Thus, the court construes the portion of the Complaint pertaining to the individual Defendants, True, Lopez, and Alston, to allege a

violation of the Eight Amendment pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 391, 91 S.Ct. 1999, 2002, 29 L.Ed.2d 619 (1971), and *Carlson v. Green.*

■ Neville also does not specify whether he is suing Defendants True, Lopez, and Alston in their official or individual capacities. A *Bivens* action may not be maintained against a federal employees in their official capacities. *Ecclesiastical Order of the Ism of Am., Inc. v. Chasin,* 845 F.2d 113, 116 (6th Cir.1988). As such, the court will construe the federal claim against True, Lopez, and Alston to be in their individual capacities for money damages and against the USMS for damages and injunctive relief. *See, e.g., Wilson v. Civil Town of Clayton, Indiana,* 839 F.2d 375, 378 (7th Cir.1988).

■ With regard to the portion of the Complaint pertaining to the USMS, the court notes that the USMS is a federal agency, thus, the claim is effectually against the United States of America. Again, the court construes the Complaint to allege a *Bivens*-type claim against the United States. Further, since the Federal Tort Claims Act ("FTCA") is the exclusive remedy for money damages against the United States for the wrongful acts or omissions of a federal employee while that employee acted within his scope of employment, 28 U.S.C. § 2679(b)(1), the court construes the Complaint against the United States to seek injunctive relief pursuant to *Bivens,* and damages under the FTCA.[7]

Prior to discussing Defendants' contentions, the court acknowledges that Plaintiff has yet to comply with Local Rule 12(N) The procedural defects could warrant dismissal. Nevertheless, the court opts to address the issues raised by Defendants' mo-

tion. *Henderson v. Harris,* 672 F.Supp. 1054, 1057 (N.D.Ill.1987) (disregarding the failures of a *pro se* litigant to abide by the Local Rules, and addressing the merits of the case instead).

Defendants cite several reasons to support their motion for judgment as a matter of law, including a purported lack of personal jurisdiction, Neville's failure to exhaust administrative remedies, a lack of sufficient facts to support Neville's *Bivens* claim, qualified immunity, and sovereign immunity of the federal government. Since the court finds that Neville failed to properly serve certain parties, and that the facts do not support the allegations in Neville's Complaint, the court need not address the latter two issues.

■ The court will first determine whether it has personal jurisdiction over the Defendants. With regard to the individual Defendants, True, Lopez and Alston, Federal Rule of Civil Procedure 4 requires service of process, including the summons and Complaint, upon each of them. Fed.R.Civ.P. 4(c)(2)(C), (d)(1) & (e). The court file and Docket show that, although Alston and True have been properly and effectively served, Lopez has yet to receive service. Without satisfaction of this procedural requirement, the court is without personal jurisdiction over Defendant Lopez. *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Therefore, the court must dismiss any and all claims against Lopez, as mandated by Rules 12(b)(2), (4) & (5) of the Federal Rules of Civil Procedure.[8]

■ With regard to jurisdiction over the United States, against which Neville seeks injunctive relief, the law requires that notice of this action, including copies of the sum-

**7.** In *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court established that a plaintiff may maintain an action against individual defendants under *Bivens* while additionally suing the United States pursuant to the Federal Tort Claims Act.

**8.** Even assuming *arguendo* that this court has jurisdiction over Lopez, which it does not, the court notes for the record that the facts that pertain to the person the court assumes is Lopez fail to show even simple negligence. Lopez ex-

amined Neville once. Later that day, Neville was unable to contact Lopez. The court finds that this fact is trivial. On the other hand, several facts exist to show that Lopez provided excellent medical care. On July 20, 1992, Lopez ordered that Neville be excepted from work assignments for over a year. Lopez instructed the MCC staff to allow Neville to sleep on the lower bunk. Finally, Lopez provided Neville with a cane for ambulation for 15 months.

mons and Complaint, be served upon the "United States attorney for the district in which the action is brought ... [and] to the Attorney General of the United States at Washington, District of Columbia...." Fed. R.Civ.P. 4(d)(4). Neville did not do so and his failure to comply with the Federal Rule is fatal. Accordingly, the court is without jurisdiction over the United States.[9]

The only remaining Defendants to this action are True and Alston. Therefore, the only relief the law allows Neville to seek against True and Alston is for monetary damages.

■ Defendants' second argument in support of their motion is that Neville failed to exhaust the administrative remedies set forth in 29 C.F.R. Part 542 (1991), which include the general "Administrative Remedy Procedure for Inmates" assigned to federal correctional facilities. *McCarthy v. Madigan*, 503 U.S. 140, 142, 112 S.Ct. 1081, 1085, 117 L.Ed.2d 291 (1992).[10] However, this argument is without merit. The Supreme Court has already disposed of such an argument. A prisoner who seeks only money damages is not required to exhaust administrative remedies provide by the Bureau of Prisons' grievance procedure since monetary relief can neither be sought nor provided by such grievances. *Id.* at 155, 112 S.Ct. at 1091–92. Therefore, since the portion of Neville's claim that involves injunctive relief has been eliminated, Neville now seeks only damages, and is not barred from suing in federal court by his failure to exhaust administrative remedies.

■ The court next addresses the merits of Neville's *Bivens*–type claim against Alston and True. As previously discussed, the Supreme Court recognizes a claim against individual federal officials for the deprivation of right secured by the Eighth Amendment, the right of an inmate to be free from cruel and unusual punishment.[11] *Carlson*, 446 U.S. at 25, 100 S.Ct. at 1475. This right is violated when a prison official or member of the prison medical staff exhibits deliberate indifference to an inmate's serious medical needs, thus resulting in injury. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A pretrial detainee is afforded the same constitutional right to be free from cruel and unusual punishment as is a convicted inmate. *Murphy v. Walker*, 51 F.3d 714 (7th Cir.1995). Thus, the court's inquiry is three-fold: (1) whether serious medical needs exist; (2) whether True and Alston exhibited deliberate indifferent to Neville's serious medical needs; and (3) whether the deliberate denial of essential care resulted in actual harm. *Id.; Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir.1980).

■ First, a serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Inst. In-*

---

**9.** However, the facts do not show that the United States Marshals acted negligently in ensuring that Neville's medical needs were met. Therefore, even if this court were to find that the United States waived personal jurisdiction, the court would still find against Neville and for the United States.

**10.** "To promote efficient dispute resolution, the procedure includes rapid filing and response timetables. An inmate first seeks informal resolution of his claim by consulting prison personnel. [28 C.F.R.] § 542.13(a). If this informal effort fails, the prisoner 'may file a formal written complaint on the appropriate form, within 15 calendar days of the date on which the basis of the complaint occurred.' [28 C.F.R.] § 13(b). Should the warden fail to respond to the inmate's satisfaction within 15 days, the inmate has 20 days to appeal to the Bureau's Regional Director, who has 30 days to respond. If the

inmate still remains unsatisfied, he has 30 days to make a final appeal to the Bureau's General Counsel, who has another 30 days to respond. [28 C.F.R.] §§ 543.14, 543.15. If the inmate a 'valid reason for delay,' he 'shall be allowed' an extension of any of these time periods for filing. [28 C.F.R.] § 542.13(b)." *McCarthy v. Madigan*, 503 U.S. 140, 143, 112 S.Ct. 1081, 1085, 117 L.Ed.2d 291 (1992).

**11.** "The federal government is obliged to provide medical care for those whom it is punishing by incarceration. [Neville's] custodians had an obvious duty to see that the [pretrial detention] did, and does, not become one of either excessive cruelty or death because of their failure to attend to [his] medical needs when, because of her loss of liberty, [he] cannot attend to them [himself]." *Henderson v. Harris*, 672 F.Supp. 1054, 1063 (N.D.Ill.1987).

mates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987). Moreover, a serious medical need exists where the denial or delay of medical treatment results in "unnecessary and wanton infliction of pain." Id. The court finds that Neville had, and continues to have, many serious needs. Neville has a heart condition, a pacemaker, and poor circulation. The poor circulation causes a skin condition that continues to plague Neville. Therefore, the first part of the inquiry is satisfied.

 Second, deliberate indifference is defined as "recklessness" in the criminal sense. Farmer v. Brennan, — U.S. —, —, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). To act deliberately indifferent to a plaintiff's medical needs, a defendant must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at —, 114 S.Ct. at 1981. Deliberate indifference occurs when a defendant intentionally denies or delays access to medical care, or if the defendant intentionally interferes with a prescribed treatment. Kerney v. Chicago Police Officers, No. 93 C 7081, 1995 WL 493442, at *2 (N.D.Ill. Aug. 16, 1995). The indifference to medical needs must be substantial; "[n]either an inadvertent failure to provide medical care nor negligence in treating a medical condition amount to Eighth Amendment violations." Kelubai v. Wright, No. 94 CV 0305 AS, 1995 WL 477740, at *3 (N.D.Ind. Aug. 7, 1995) (citing Estelle v. Gamble, 429 U.S. 97, 106–07, 97 S.Ct. 285, 292–93, 50 L.Ed.2d 251 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106, 97 S.Ct. at 292; Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir.1991).

The record demonstrates that True and Alston were not deliberately indifferent to Neville's serious medical needs. With regard to Alston, the record shows that contrary to Neville's allegations, Alston provided competent medical treatment and that she, as did the entire MCC medical staff, gave Neville the necessary medical attention. Alston, the MCC Clinical Director, scheduled a great number of appointments with "outside doctors" at three different hospitals to compliment and supplement the treatment ad-

ministered to Neville at the MCC. The only time Alston had the opportunity to personally treat Neville, Alston did so; she administered oxygen and bandaged Neville's wrist. In fact, Alston did much more than the bare minimum. The record shows that on June 19, 1992, Alston ordered the MCC staff to provide Neville with an extra pillow and fan for Neville's room "for medical reasons" for one year. Alston also prescribed a cane to Neville for ambulation. Alston counseled Neville to undergo pacemaker surgery, but Neville repeatedly refused. Neville did not receive the pacemaker until well after he filed this Complaint. Moreover, facts exist to show that Neville himself caused certain injuries to his legs, and hindered treatment and proper healing of his leg injuries by unwrapping the bandages and re-opening the healing wounds.

In sum, the court finds that Alston, and her staff, met every legal duty owed to Neville; thus, the actions of Alston were not tantamount to medical malpractice or simple negligence, and certainly do not rise to the level of deliberate indifference to Neville's medical needs. Even when viewed under a light most favorable to Neville, the facts do not show that Alston violated Neville's Eighth Amendment rights. Accordingly, the court enters judgment in favor of Alston and against Neville.

 With regard to True, the record is devoid of any facts to show that True was involved in any negligent wrongdoing, let alone intentional deprivation of Neville's Eighth Amendment rights. True is not mentioned by name in any of Neville's allegations. True is not responsible for the day-to-day management of any department within the MCC; rather, his duty is to delegate such responsibilities to the appropriate associate warden or department head. A defendant cannot be held liable by virtue of his employment or supervision of individuals who are alleged to have engaged in unconstitutional conduct. Rizzo v. Goode, 423 U.S. 362, 373–74, 96 S.Ct. 598, 605–06, 46 L.Ed.2d 561 (1976). Neville never made any oral or written complaint to True, and True at no time had any personal contact with Neville. Neville must show that True was personally

involved in the alleged violations of his rights. *Rascon v. Hardiman,* 803 F.2d 269 (7th Cir.1986) Therefore, the court finds that True has met his burden in demonstrating that there is an absence of evidence to support Neville's position. The court, accordingly, disposes of the factually unsupported claim against True by granting summary judgment in favor of True and against Neville.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted in favor of True and Alston and against Neville. Due to improper service and a lack of personal jurisdiction, the court dismisses all allegations pertaining to Lopez and the United States. Because plaintiff is indigent the court will not impose any costs or fees against him.

IT IS SO ORDERED.