**Melvin WADE, Plaintiff,**

v.

**Oscar L. BYLES, and T–Force Security Co., Inc., Defendant.**

No. 92 C 6527.

United States District Court,
N.D. Illinois,
Eastern Division.

May 25, 1995.

Kevin Barry Rogers, Kevin Rogers & Associates, Chicago, IL, for plaintiff.

Donald E. Stellato, James Bartlett, Theodore C. Hadley, Esther Joy Schwartz, Stellato & Schwartz, Ltd., and Joseph Michael Gagliardo, James J. Convery, and Peter Louis Albrecht, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for defendants.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendants' motion for summary judgment on Count I of the Third Amended Complaint ("Complaint"). For the following reasons, the motion is granted.

### FACTS [1]

Melvin Wade is an Illinois citizen and resident of Chicago. On August 10, 1992, Defen-

**1.** The facts are drawn from the parties' submis-    sion in accordance with Local Rule 12(M) and

dant Oscar L. Byles ("Byles") was employed by Defendant T–Force Security Company, Incorporated ("T–Force") as a security guard at a Chicago Housing Authority ("CHA") owned building. At approximately 3:30 p.m., in the foyer of the building, Byles shot Wade in the thigh.[2] Wade contends that Byles was a state actor at the time of the incident, and he is in this court pursuant to 42 U.S.C. § 1983 alleging a violation of the Fourth Amendment. Wade also asserts several state law claims. Defendants have moved for summary judgment on Count I contending that Wade has not presented evidence supporting his claim that Byles was acting under color of state law at the time of the incident.

T–Force is a private Illinois corporation. Byles was at all times relevant to this litigation, a security guard and private citizen employed by T–Force. Byles was never employed by, or acted as the agent of, the CHA. Wade asserts that Byles was an agent of the CHA. He supports this assertion by citing to two inter-office CHA memoranda. The first is from the Director of Contract Security to the Chief Administrator Development Operations directing him to be sure that all CHA Development Managers, Building Managers, and Assistant Managers be aware of the specific duties and responsibilities of the contract guards. The second memorandum is from the same person to the Operations Administrator advising him of the duties and responsibilities of the contract security guards. Attached to each memorandum is a list detailing those duties and responsibilities.

Wade's contention that these memoranda establish the CHA's direction and control of individual security guards is meritless. These are simply outlines of the guards' responsibilities. Wade has presented no evidence that the CHA controlled or directed the day to day activities of the contract security guards. *Petersen v. United States Reduction Co.*, 267 Ill.App.3d 775, 204 Ill.Dec. 415, 420, 641 N.E.2d 845, 850 (1st Dist.1994).

As the security guard in the building lobby on the August 10, 1992, Byles's limited duties, as described in a CHA inter-office memorandum, were to:

1. Maintain security of immediate lobby area

2. Enforce Visitation Policy, Exclusion List & ID's

3. Report emergencies to Emergency Services

4. Prepare Incident Reports (copies to managers & Contract Security)

5. Sign Criminal Complaint and appear in court

6. Work in a neat and clean uniform

7. Uniform must clearly identify the guard company

8. Aid and assist persons in the immediate vicinity of the lobby area and entrance door. Immediate vicinity is relegated to the judgment of each guard and may be dependent on such factors as seriousness of the incident, distance from the lobby area, and length of time away from the lobby area

9. Not to leave guard station or immediate lobby area without being properly relieved

10. Possess and carry all necessary identification cards.

(Pl.'s Ex. C.) The visitation policy required the security guard on duty to check the identification of all visitors entering the building. Visitors were required to provide identification, be identified by a resident as a guest, and sign in before being admitted to the building. (Pl.'s Ex. F; Pl.'s Ex. H.)

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

---

12(N) of the United States District Court for the Northern District of Illinois.

**2.** Wade and Byles have very different versions of what actions precipitated the shooting. Byles contends that he shot Wade in self-defense after

Wade threatened his life and pointed a handgun at him. Wade contends that Byles shot him without cause, provocation, or justification. However, resolution of this factual dispute is not necessary to decide the instant motion for summary judgment.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir.1994); *Transportation Communications Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994). Nor will some metaphysical doubt as to the material facts suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, the non-moving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

■ To recover on claim brought under § 1983, a plaintiff must establish that the defendants were acting under color of state law and that their conduct deprived the plaintiff of rights secured by the Constitution. *Letisha A. By Murphy v. Morgan*, 855 F.Supp. 943, 947 (N.D.Ill.1994). A plaintiff may establish that an otherwise private party is a state actor in several ways. Wade contends that he can demonstrate that Byles was a state actor under two theories. First,

Wade contends that T–Force was exercising police powers, which is a quintessential public function, and, therefore, Byles was a state actor. Second, Wade contends that the CHA affirmatively assisted, encouraged, and directed Byles and T–Force such that their acts must be considered state action. The court will deal with these arguments in turn.

■ "State action can arise when a state delegates to a private party a power 'traditionally exclusively reserved to the state.'" *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 193 (7th Cir.1985) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). Wade asserts that the CHA had delegated police power to T–Force and that, on the date in question, Byles was exercising that power when he shot Wade. Wade, however, has provided nothing beyond his mere assertion to support that contention.

First, Wade asserts that the CHA employed T–Force pursuant to its power to establish a police force granted to the CHA by the Illinois Legislature under 310 ILCS 10/8.1(a). That statute grants Housing Authorities in municipalities with over 500,000 inhabitants the:

[P]ower to police its property and exercise police powers for the protection of the persons and property of its residents, employees, and visitors.... Members of such police force shall be conservators of the peace and shall have all powers possessed by the police of cities, and sheriffs, including the power to make arrests for violations of federal and state statutes, city and county ordinances, and rules and regulations of the Authority.... Unless expressly limited by the Authority, when outside the property or facilities of the authority, the members of the police force shall have the same powers as those conferred on the police of organized cities and villages when acting outside of the territorial limits of their city or village.

310 ILCS 10/8.1(a). However, the contract between T–Force and the CHA does not cite to this statute. Furthermore, Wade does not cite to any other evidence, testimonial or documentary, indicating that this was the statutory authority for the CHA to contract

for security services. Additionally, the CHA does have its own police force established pursuant to 310 ILCS 10/8.1(a), *Pratt v. Chicago Housing Authority*, 848 F.Supp. 792, 793 (N.D.Ill.1994). That police force is a distinct entity, and the contract security guards provided by companies such as T–Force are separate from it. (*See* Rogers Dep. at 23, 32.)

Moreover, all of the evidence presented indicates that the authority granted to the contract security guards was very limited. Thus, indicating that T–Force security guards, Byles included, were not authorized to exercise police power. The contract itself has no language which could give rise to the inference that the CHA intended to delegate its police powers to T–Force.

In addition, William T. Rogers ("Rogers"), the Deputy Director of the CHA security force testified that the primary duty of a contract security guard in the lobbies is to control access in and out of the building and to give people information and assistance. The contract security guards, as contrasted with the CHA police, are not involved in protective sweeps of the buildings. (Rogers Dep. at 23).

Wade cites to two memoranda from the CHA to all contract security guard companies providing guards to the CHA as support for the proposition that Byles was imbued with general police powers. In those memoranda, the CHA insists that training be given to all guards regarding the use of deadly force. (Pl.'s Ex. H.) Wade argues that these memoranda establish that Byles was empowered to use deadly force in the same fashion as any peace officer would be. However, there is nothing in either memorandum to support such an interpretation. Both merely indicate that the guards are to be given training on the use of deadly force. This is consistent with Byles's deposition testimony which demonstrates that he was not empowered to use deadly force in any way beyond that of any private citizen. Byles testified that he was instructed by his superior that he could only use deadly force in self-defense or in the defense of his coworker.

(Byles Dep. at 70, 74.) In addition, he testified that he was only authorized to detain people for criminal trespass until the police came.[3] (Byles Dep. at 86.) This limitation clearly contrasts with the police power granted through 310 ILCS 10/8.1(a) which gives Housing Authority police forces the power to arrest persons for violations of federal and state statutes, county and city ordinances, and housing authority rules. 310 ILCS 10/8/1(a).

Additionally, the CHA memorandum listing the lobby security guards' duties makes clear that those duties are extremely limited. That memorandum, in summary, described the guards' duties as enforcing the visitation policy, reporting emergencies, and aiding residents in the immediate vicinity of the lobby. (Pl.'s Ex. C.) The memorandum sent from the Director of Contract Security to the Chief Administrator of Development Operations clearly indicates that, in contrast to the CHA Police Department, the contract security guards do not perform vertical patrols within the buildings. (Pl.'s Ex. B.) The facts presented show the contract security guard employed at the lobby of the CHA building had no more authority to use police power than would doormen employed in any number of residential buildings in the City of Chicago. The only fact that remotely justifies the inquiry on this issue in this case is that the landlord in this instance is the CHA instead of a private real estate developer or condominium association.

Wade's argument based on *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) is not well-founded. In *West*, the Supreme Court held that a doctor providing medical care to an inmate was a state actor. The Court reasoned that because the state had a Constitutional obligation to provide inmates with medical care, those employed to provide that care were state actors, *id.* at 55, 108 S.Ct. at 2258–59, and the fact that the respondent was employed pursuant to contract as opposed to being a state employee did not change that conclusion. *Id.*

---

**3.** The court notes that the arrest of an individual acting unlawfully is not the exclusive function of the state. *Spencer v. Lee*, 864 F.2d 1376, 1380 (7th Cir.1989).

Wade argues that like the defendant in *West*, the CHA had an affirmative obligation to insure that its residents were not subject to illegal searches and seizures. Thus, police acting on the behalf of the CHA were charged with the responsibility of adhering to Fourth Amendment standards. However, his contention that he was subject to such seizure is based upon the presumption that the CHA had delegated general police powers to T–Force, and that, therefore, at the time of the shooting, Byles was a state actor. As discussed above, this was not the case. Therefore, his argument fails.

■ Without argument developing the point, Wade also asserts that the CHA affirmatively assisted, encouraged, and directed Byles and T–Force to engage in the challenged activity qualifying Byles as a state actor under the exception outlined in *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737–38, 56 L.Ed.2d 185 (1978). However, to come within this exception, the plaintiff must "adduce sufficient facts to show that the State affirmatively assisted, encouraged, or directed the private party to engage in the challenged activity...." *Letisha*, 855 F.Supp. at 948. Mere acquiescence is not enough. *Id.*

Wade has not adduced any facts which lend themselves to the inference that the CHA affirmatively encouraged or directed Byles to engage in the challenged activity of allegedly shooting Wade without justification. The mere fact that Byles was employed as a guard to implement the CHA visitation policy does not give rise to the inference that it encouraged the allegedly unlawful actions.

Wade has failed to demonstrate that there is a genuine issue of material fact as to whether Byles was acting under color of state law when he shot Wade. Accordingly, the court grants Defendants' motion for summary judgment on Count I of the Complaint. Because the claim under 42 U.S.C. § 1983 in Count I was the sole basis for federal jurisdiction in this case, the court dismisses the remaining claims brought under various state law theories. The court takes no position as to the potential merit of those claims, and Wade is free to pursue relief in the state court.

## CONCLUSION

For the foregoing reasons, the motion of Defendants Byles and T–Force for summary judgment is granted. All remaining claims, Counts II through IV, are dismissed.

IT IS SO ORDERED.