**Eutes WHITE, Plaintiff,**

**v.**

**Keith COOPER, et al., Defendants.**

**No. 96 C 5400.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 20, 1999.

Halm Electrical Contractors, Inc., defendants.

Harvey N. Levin, Robert M. Smith, Law Office of Cairns & Levin, Chicago, IL, for Certified Midwest Construction, defendant.

Leslie J. Kipnis, Kipnis, Kahn & Bruggeman, Chicago, IL, for Henry Tatro, Estate of, defendant.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Defendants Keith Cooper, Paul Lee, Christopher Marry, Jeffrey Patch, William Schriever, Nicholas Lamb and Christopher Campos ("state defendants"), and defendants Chuck James and Air Design Systems, Inc. (ADS), have each moved to dismiss Plaintiff Eutes White's second amended complaint. For the reasons set forth below, the court denies both motions.

## FACTS

Plaintiff, who remains in the custody of the Illinois Department of Corrections, brings this action against defendants pursuant to the United States Constitution and 42 U.S.C. § 1983, alleging that defendants' acts and omissions subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff also claims in his second amended complaint that ADS negligently caused plaintiff to be injured.

On March 19, 1996, while plaintiff was an inmate at the Joliet Correctional Center, a fire started in plaintiff's cell when plaintiff fell asleep while smoking a cigarette. The west cellhouse, where plaintiff was located at the time of the fire, was undergoing extensive renovation. The smoke evacuation system serving plaintiff's location was not operational and both of the smoke evacuation fans within the area had been removed. Nor were the fire alarm and smoke alarm systems function-

Eutes White, Mt. Sterling, IL, pro se.

Mary E. Rosen, Landau, Omahana & Kopka, Ltd., Chicago, IL, for Eutes White, plaintiff.

Diann Karen Marsalek, Amy S. Ratterree, Illinois Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for Keith Cooper, Warden, Christopher Marry, William Schriever, Paul Lee, Nicholas Lamb, Christopher Campos, Jeffrey Patch, defendants.

David Harris Wolfe, Patrick Ross Grady, Wolf & Associates, Chicago, IL, for Chuck James, Air Design Systems, Inc., defendants.

T. Donald Henson, Douglas Alan Gift, Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., LaSalle, IL, for Ron Ott,

ing in the west cellhouse. Plaintiff alleges that although named defendant correctional officers Lamb, Lee, Patch and Campos knew of the fire while it was occurring, they failed to take any action to assist plaintiff for an unreasonably long period of time.

As a result of the fire, plaintiff sustained severe burns over a large part of his body and suffered from severe smoke inhalation. After his hospitalization for his injuries, plaintiff was transferred to the Menard prison for treatment of his mental illness. The Department of Corrections was aware that plaintiff was seriously mentally ill and posed a danger to himself. He had a long history of mental illness and was taking prescription psychotropic medication at the time the fire occurred. On October 4, 1996, the Menard Psychiatric Center reported plaintiff was on suicide watch, "was eating feces and urine" and was "sticking his head in the toilet and trying to flush it." Plaintiff's Exhibit C.

On July 5, 1996, plaintiff filed his original complaint, naming Warden Cooper and Lt. Douglas Read as defendants, along with an application to proceed *in forma pauperis* (IFP) in the district court of the Southern District of Illinois. On August 15, 1996, Judge Beatty, the assigned judge, transferred the case to the Northern District of Illinois.[1] Plaintiff filed his first motion for appointment of counsel on August 26, 1996. Plaintiff also filed a motion for documents from the Department of Corrections on September 17, 1996, and a request for a court order for medical records on October 31, 1996. In the motion for documents, plaintiff requested "*all* documents, medical reports, summarys, [sic] witnesses, statements, etc. based on the incident that took place on 3–19–96" (em-

phasis in original). He additionally stated that on that date, he was in his cell 30 or 45 minutes before any officials arrived and that when prison officials did arrive, they stood outside his cell for five minutes watching him scream to be let out of the cell.

The court granted the IFP application on February 10, 1997, but denied the two pending motions for appointment of counsel. On July 14, 1997, plaintiff filed a motion for leave to file an amended/supplemental complaint instanter and a response to defendants' pending motion to dismiss. He stated that he was asserting a claim of deliberate indifference to his health and safety needs in violation of the Eighth and Fourteenth Amendments and that he was not seeking to hold Warden Cooper liable under a theory of respondeat superior. He also alleged that Lt. Read had provided false reports and statements that resulted in a loss of plaintiff's good time credit.[2] In September 1997, the court granted this motion but denied the motions for documents as premature, indicating that plaintiff could renew these motions after the defendants answered or otherwise pled to the complaint. Plaintiff renewed his motion for appointment of counsel in April 1998 and twice in May 1998, and filed a motion for discovery on May 27, 1998. The court appointed counsel on October 7, 1998, denying plaintiff's discovery motions and indicating that his counsel could refile such motions as necessary. On December 2, 1998, the state defendants answered in part the written discovery requests that plaintiff's appointed counsel had served upon them.

Plaintiff alleges that the documents he received December 2, 1998, revealed the

---

1. Plaintiff filed in the Southern District of Illinois because at that time he was being treated at the Menard Psychiatric Center, which is situated in the federal judicial district for the Southern District of Illinois. Judge Beatty noted that at the time of the alleged events, plaintiff was incarcerated at Joliet Correctional Center, which was situated in the federal judicial district for the Northern

District of Illinois. He therefore found that the Northern District was the appropriate forum for this civil rights action and transferred the case pursuant to 28 U.S.C. § 1404(a).

2. Defendant Read was subsequently dismissed from the action.

names of additional prison workers, construction companies and construction workers who may have played a role in causing plaintiff's injuries. On December 22, 1998, plaintiff filed a motion for leave to file a second amended complaint, which the court granted on December 29, 1999. In his second amended complaint, filed January 22, 1999, plaintiff added six new state defendants as well as a number of construction companies and workers. Defendants Cooper, Lee, Marry, Patch, Schriever, Lamb, Campos, James and ADS have filed motions to dismiss plaintiff's complaint, which are now before the court.

## STANDARD OF REVIEW

■ When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court does not test the merits of a plaintiff's complaint, but decides whether a plaintiff has properly stated a claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). At this stage, the court must view the complaint in the light most favorable to the plaintiff, accepting all well pleaded factual allegations as true. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1363 at 460–461 (1990). When ruling on a 12(b)(6) motion, the court must draw all reasonable inferences in favor of the plaintiff. *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996). No claim will be dismissed unless, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Nevertheless, the complaint must state direct or inferential allegations pertaining to each necessary element of the plaintiff's chosen legal theory. *See Glatt v. Chicago Park Dist.,* 847 F.Supp. 101, 103 (N.D.Ill.1994).

## STATUTE OF LIMITATIONS

■ In support of their motions to dismiss, both state defendants and ADS argue that plaintiff's second amended complaint is barred by the statute of limitations. If it is apparent from plaintiff's complaint that his suit is barred by the statute of limitations, the court may dismiss plaintiff's action pursuant to rule 12(b)(6). *Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 67 F.3d 605, 608 (7th Cir.). The text of § 1983 does not provide a federal statute of limitations. 42 U.S.C. § 1983 (1994). The Supreme Court has held that § 1983 civil rights actions are best characterized as personal injury suits and that courts should apply the personal injury statute of limitations of the state where the alleged violation occurred to all § 1983 claims. *See Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Farrell v. McDonough,* 966 F.2d 279, 280 (7th Cir.1992). Thus, § 1983 claims arising in Illinois are governed by 735 ILCS 5/13–202, which provides for a personal injury limitations period of two years. *See Farrell v. McDonough,* 966 F.2d at 280; *Kalimara v. Illinois Department of Corrections,* 879 F.2d 276, 277 (7th Cir. 1989).

Plaintiffs claims arise out of his injuries that resulted from the fire in his cell on March 19, 1996, and therefore accrued on this date. *See Hill v. Godinez,* 955 F.Supp. at 950; *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992). The two-year statute of limitations therefore expired on March 19, 1998. Because plaintiff filed his second amended complaint more than two years after the date of accrual, the addition of each new defendant in that complaint falls beyond the running of the statute of limitations.

There are, however, several exceptions to a statute of limitations defense that plaintiff claims clearly apply here. Plaintiff contends that the addition of new defendants in his second amended complaint relates back to his original filing and thus is not barred by the two-year limitations period. He also asserts that the doctrine of equitable tolling applies to his situation. *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548 (7th Cir.1996).

The doctrine of relation back is governed by Federal Rule of Civil Procedure 15(c), which states:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) know or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c). Under Rule 15, courts have allowed relation back of amended complaints that add or change defendants if each of the three prerequisites set forth in Rule 15 has been met. *Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir.1980). First, the amended claim must arise out of the same occurrence set forth in the original complaint. Second, new defendants in the amended complaint must have received notice of the action either within the statute of limitations period or within the 120 day period allowed under Rule 4(m) for service of process. *Woods v. Indiana University–Purdue University at Indianapolis*, 996 F.2d 880, 884 (7th Cir.1993). Third, "the purported substitute defendant must have or should have known that, but for a mistake concerning the identity of the proper party, the action would have

been brought against him." *Wood,* 618 F.2d at 1229.

The first prerequisite of Rule 15(c) has clearly been met as to all defendants as all of the allegations in plaintiff's second amended complaint arise from the fire on March 19, 1996. The second requirement, notice of the institution of an action, may be formal or informal for purposes of Rule 15(c). Knowledge of an incident that could give rise to the institution of an action will often suffice as long as the new defendant "should have known or realized that he would be a proper defendant." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1498 at 123 (1990); *Woods,* 996 F.2d at 888. Here, ADS learned of the March 19, 1996, fire as early as March 21, 1996, when it received a letter from Sarti Architectural Group, Inc., informing it of problems with the prison's smoke evacuation system. *See* Plaintiff's Exhibit A. It is also possible that the additional state defendants had notice of their involvement with the fire because investigations into its cause and the reason for delay in extinguishing it were undertaken at the prison following the incident. These investigations also mitigate any possibility of prejudice to the defendants that could be caused by a delay in naming them as defendants. *Id.* ("the statute of limitations does not insulate from suit an individual who did not initially receive service (or other notice) in the correct capacity, so long as no prejudice resulted"). According to facts pleaded in the complaint, it is therefore likely that Rule 15(c)'s second prerequisite has also been satisfied. The court need not examine this requirement further, however, because plaintiff's addition of the state defendants and ADS does not meet the third element of relation back under Rule 15(c).

Pursuant to Rule 15(c)(3)(B), amendment of a complaint to add a new defendant is allowed only to correct a misnomer of a defendant about whom the complaining party had knowledge at the

time he filed his complaint. *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993) (*citing Wood v. Worachek*, 618 F.2d at 1229). Plaintiff cites *Donald v. Cook County Sheriff's Department* as support for his position that relation back should apply to this situation. 95 F.3d 548 (7th Cir.1996). In *Donald*, however, the plaintiff believed that by suing the Sheriff's Department, the individual officers and doctor he alleged had injured him would be included in the suit. Upon learning that this was not the case, the plaintiff attempted to name the individual officers and doctor by shift as he did not know their names. *Id.* at 552.

In the case at bar, plaintiff's second amended complaint did not merely correct a mistake in the name under which he had identified a defendant in his original complaint. Rather, plaintiff failed to name the new defendants in his original complaint because he lacked knowledge as to the factual allegations supporting a claim against them. It was only after defendants produced documents from the internal investigation that plaintiff had documents supporting a claim against the additional defendants. Rule 15(c)(3) " 'does not permit relation back where . . . there is a lack of knowledge of the proper party.' " *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993) (quoting *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir.1980)). In short, plaintiff, through his second amended complaint, was not attempting to "substitute a proper party for an improper party, but rather wishe(d) to name a new defendant and different party altogether." *Savory v. O'Leary*, 1994 WL 282289, 5 (N.D.Ill. 1994). Because the element of mistake is absent from plaintiff's defense, the court concludes that his second amended complaint against the newly added defendants does not satisfy the third requirement for relation back under Rule 15(c).

■ Plaintiff also argues that he is entitled to avoid the bar of the statute of limitations through the doctrine of equitable tolling, which allows a plaintiff to avoid the effect of the statute of limitations "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corporation*, 920 F.2d 446, 451 (7th Cir.1990) (*citing Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). In short, "a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993) (*quoting Central States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir.1992)). The doctrine of equitable tolling does not require any wrongful action on behalf of the defendant to prevent the plaintiff from bringing his claim. *Id.* at 451. Instead, equitable tolling is applicable where the plaintiff knows he has been injured but is unable to obtain evidence necessary to determine who may be liable for his injury. *Id.*; *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 789 (7th Cir. 1995).

■ Plaintiff contends that, despite his diligence, the delay of discovery prevented him from obtaining information necessary to bring claims against the defendants added in his second amended complaint. The court notes that plaintiff did make reasonable efforts to discover additional information about his case and to secure court-appointed counsel. Plaintiff, while acting *pro se*, filed a timely complaint less than four months after the incident despite his extended recuperation period and additional treatment for his mental illness. He then filed a number of requests for discovery, the first only two-and-a-half months after filing his complaint. All of these went unanswered—and indeed were even denied by the court—until the state defendants complied with court-appointed counsel's discovery requests on or about December 2, 1998.[3]

The facts of plaintiff's case, as alleged in his second amended complaint, suggest the possibility that he suffered a significant deprivation of his constitutional rights. As a *pro se* inmate at a state correctional facility, the plaintiff in this case was at a particular disadvantage in trying to discover individuals who may have been accountable for his extensive physical injuries. *See Duncan v. Duckworth,* 644 F.2d 653, 656 (7th Cir.1981). Identification of possible defendants in any case where a plaintiff's injuries resulted from the actions of unknown tortfeasors is nearly impossible without the aid of pretrial discovery. *See Billman v. Indiana Department of Corrections,* 56 F.3d at 789. Plaintiff's opportunities, without the assistance of counsel, for any pre-complaint investigation as to possible additional defendants were virtually non-existent. *See id.* If the court had not kept plaintiff's IFP application in abeyance for such an extended period of time, it is likely that he would have discovered additional defendants sooner, and thus been able to add them within the limitations period. As noted above, plaintiff proceeded with his case diligently and filed his discovery requests within a short time of filing his complaint. The court's delay in granting his IFP is another equitable reason to suspend the statute of limitations period and extend it to allow addition of the newly named defendants. A finding by this court that any reasonable person in the plaintiff's position would have been able to identify responsible parties prior to discovery or prior to the running of the statute of limitations would be unsound. *See Klinkhammer v. Lane,* 1993 WL 524724, \*2 (N.D.Ill.1993).

■ Considering these findings, the court finds that the application of the doctrine of equitable tolling is appropriate in this case to suspend the running of the statute of limitations "for such time as was reasonably necessary to conduct the necessary inquiry." *Cada v. Baxter Healthcare Corporation,* 920 F.2d at 451. In his response brief, plaintiff contends that he was unable to identify additional defendants until discovery documents were first received from the state defendants on or about December 2, 1998. Therefore, the court holds that the plaintiff is entitled to employ the doctrine of equitable tolling to suspend the running of the two year stat-

---

**3.** Plaintiff contends that while not a tolling issue in and of itself, the limitations period is deemed suspended during the time he was requesting to proceed *in forma pauperis* (IFP). The statute of limitations is suspended while the court considers a motion that will effect the filing of a case. *See Williams–Guice v. Board of Educ. of City of Chicago,* 45 F.3d 161, 165 (7th Cir.1995) (*citing Brown v. J.I. Case Co.,* 756 F.2d 48 (7th Cir.1985); *Harris v. National Tea Co.,* 454 F.2d 307 (7th Cir. 1971)). This is because a plaintiff is prevented from furthering his suit while awaiting a court's decision on a motion to proceed IFP. ADS argues that *Williams–Guice* stands for the proposition that the statute of limitations is suspended only for a plaintiff whose IFP application is denied, relying on the language that "the lodging of a complaint by a person who is not entitled to proceed IFP suspends the period of limitations, which begins once again when the judge decides that payment is essential." *See Williams–Guice v. Board of Educ. of City of Chicago,* 45 F.3d at 164 (*quoting Jarrett v. U.S. Sprint Communications*

*Co.,* 22 F.3d 256 (10th Cir.1994)). This interpretation of *Williams–Guice* is clearly wrong. A plaintiff whose IFP application is granted has no problem with the statute of limitations as long as the IFP application was filed before it expired. *See Paulk v. Dept. of the Air Force,* 830 F.2d 79, 83 (7th Cir.1987). *Williams–Guice* involved the distinct issue of whether the statute of limitations was tolled during the time the court considered the application for IFP when the court ultimately denied the application and the plaintiff did not timely pay the filing fee. However, the cases plaintiff cites, including *Williams–Guice,* concern instances where the defendant asserting a statute of limitations defense was named in the original complaint and the statute of limitations as to that defendant expired while the court was considering the application to proceed in forma pauperis. The situation here involves defendants not named in the original filing, so the automatic tolling of the statute of limitations during the pendency of the IFP application does not apply to them.

ute of limitations from July 5, 1996, until December 2, 1998.

 ADS argues that the statute should not be tolled to allow the addition of ADS as defendants since the defense of equitable tolling was based on the conduct of the State defendants. The court disagrees. As noted above, application of the doctrine does not depend on the fault of any particular defendant, but rather on a plaintiff's inability, despite due diligence, to obtain information vital to bringing a claim. Thus, equity would require tolling of the statute in this case to allow the addition of both state defendants and ADS, regardless of which defendants, if any, were responsible for plaintiff's lack of information.

It is also important to note that plaintiff's suit was brought within a reasonable time after he obtained the new information. *See id.* at 453. After plaintiff received the discovered documents on December 2, 1998, he filed a motion for leave to file an amended complaint on December 22, 1998. The court granted this motion on December 29, 1998, and plaintiff filed the amended complaint on January 22, 1999, less than two months after defendant's initial response to discovery requests. Furthermore, ADS was made aware of the March 19, 1996, fire and problems with the smoke evacuation system as early as March 21, 1996, and should have anticipated the possibility of claims being brought against them. *See* Plaintiff's Exhibit A. The court does not find that there has been substantial prejudice to either the state or ADS in defending against this suit because information regarding the cause of the fire, reasons for delay in evacuation of inmates, and failure of fire prevention and safety equipment has neither been lost nor delayed, as each party had participated in investigations into the causes of the fire.

**FAILURE TO STATE A CLAIM**

 State defendants and ADS each assert that plaintiff's suit should be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1983. State defendants contend that because plaintiff has failed to sufficiently allege "deliberate indifference" on their behalf, his claim against state defendants Patch, Marry, Schriever, Lamb, Lee and Campos should be dismissed.[4] In order to state a claim for violation of the Eighth Amendment's protection against cruel and unusual punishment, a plaintiff's complaint must meet both an objective and subjective requirement. *Wilson v. Seiter*, 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). First, the plaintiff must show whether the deprivation of the right to be free of cruel and unusual punishment was sufficiently serious. *Id.* at 298, 111 S.Ct. 2321. Since there is no doubt that the conditions set forth in plaintiff's second amended complaint are sufficient to suggest a critical deprivation was suffered, the court concludes the first prong has been met.

 Second, the plaintiff must adequately plead that defendants acted with "deliberate indifference." *Id.* at 298–99, 111 S.Ct. 2321. Allegations of mere negligence fail to sustain a constitutional claim pursuant to § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Instead, a plaintiff must allege either "something approaching a total unconcern for his welfare in the face of serious risks" or "a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677. Thus, it is also necessary for a plaintiff to show the defendant acted or failed to act despite knowledge of a substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An inference that a defendant knew of a substantial risk from the fact

---

4. State defendant Cooper previously raised issues as to his personal involvement and deliberate indifference, which the court al-

ready considered and ruled on in the initial motion for summary judgment.

that the risk was obvious is permissible. *Id.*

In paragraph 35 of his second amended complaint, plaintiff states that defendants Lee, Lamb, Patch and Campos "knew that plaintiff faced a substantial risk of serious harm" and "ignored plaintiff's need for help." Plaintiff further indicated in his response to the state defendants' motion to dismiss that discovery documents revealed these defendants were alleged to be "outside Plaintiff's cell and laughing and joking while Plaintiff was inside burning." The complaint also alleges that defendants Marry, Tatro and Schriever knew plaintiff faced a severe and substantial risk from fire because of the inoperative fire safety and prevention equipment and, despite their ability to do so, failed to ensure the system was operational. The absence of fire safety and prevention devices, which are necessary in a correctional facility to notify staff that a fire has started and to aid in the evacuation of smoke, is an obvious risk of serious harm. Accepting all factual allegations set forth in plaintiff's complaint and drawing reasonable inferences therefrom, the court concludes that the "deliberate indifference" prong has been met with respect to all newly added state defendants. Thus, there is little justification for state defendants' boilerplate argument that plaintiff's claim fails to rise to the level of a constitutional violation.

Finally, state defendants contend that they are entitled to the defense of "qualified immunity" and thus are immune from any claim of damages or suit by plaintiff. The doctrine of qualified immunity provides that, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court agrees with plaintiff's position that state defendants' argument is, again, largely boilerplate and fails to protect them from this suit. Deliberate indifference to an inmates safety, which places an inmate in an extremely harmful and life threatening situation, certainly qualifies as a "clearly established" violation of the of the law. As plaintiff argues, the courts have held that a prison official's knowing failure to assist an inmate who faces substantial harm amounts to an Eighth Amendment violation. *See Billman v. Indiana Department of Corrections*, 56 F.3d 785. Further, it has been well established that a prison official is required under the Eighth Amendment to provide humane conditions of confinement and that disregard for an inmates safety where the risk of substantial harm is obvious violates the Constitution. *See Farmer v. Brennan*, 511 U.S. at 832, 114 S.Ct. 1970, 128 L.Ed.2d 811. In fact, it is reasonable to conclude state defendants knew that consciously disregarding a non-operational fire safety and prevention system in a state prison and failing to free a man from his burning prison cell would violate an inmates most basic and established constitutional rights. Thus, the court concludes qualified immunity is not available to any state defendant in this case.

ADS contends that plaintiff's § 1983 claim against it fails because he did not sufficiently state that ADS was acting "under color of state law" when the alleged violation occurred. Section 1983 was designed to discourage state actors, as well as private persons in collaboration with state officials, from using a "badge of authority" to deprive individuals of their constitutional rights. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998). To state a valid claim under § 1983, "a plaintiff must demonstrate that: (1) the defendant(s) deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law." *Fries v. Helsper*, 146 F.3d at 457 (*citing Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Private parties generally do not act under color of state law but may be open to § 1983 liability in certain situations. *Tomkins v. Tinley Park,* 566 F.Supp. 70, 74 (N.D.Ill.1983). To sufficiently allege that a private party acted under the color of state law, a plaintiff must demonstrate "some nexus between the conduct complained of and the state, state official or some state entity." *Musso v. Suriano,* 586 F.2d 59, 64 (7th Cir.1978); *see also Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). This "nexus test" is met in one of three ways. First, plaintiff may show that the action of a private entity fulfilled an obligation of the state in such a way that it may be fairly treated as state action. *See, e.g., Wade v. Byles,* 886 F.Supp. 654, 658 (N.D.Ill.1995). Second, plaintiff may show that the state "has exercised coercive power or has provided such significant encouragement, either overt or covert," that it compelled action on behalf of a private party. *Baltz v. County of Will,* 609 F.Supp. 992, 997 (N.D.Ill.1985) *(citing Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Simple authorization, approval of or agreement with the conduct of a private party is not sufficient to justify a finding that the party has acted under the color of state law. *See Blum,* 457 U.S. at 1004–05, 102 S.Ct. 2777; *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 354, 95 S.Ct. 449, 42 L.Ed.2d 477. Third, a plaintiff may claim that a private party individual was performing a function which has traditionally been the sole prerogative of the state. *See Blum v. Yaretsky,* 457 U.S. at 1005, 102 S.Ct. 2777, 73 L.Ed.2d 534; *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 355, 95 S.Ct. 449, 42 L.Ed.2d 477.

Plaintiff's complaint meets the first requirement for a § 1983 claim by alleging that he was deprived of rights, privileges and immunities secured to him by the Eighth Amendment when he was placed in risk of serious harm by an inoperative fire safety and prevention system. However, plaintiff's § 1983 claim against ADS does not meet the second requirement because it fails to sufficiently allege ADS acted under the color of state law while conducting construction work at the Joliet Correctional Center.

In support of its claim that ADS acted under the color of state law, plaintiff makes three arguments. First, plaintiff argues that, because the state was obligated to provide plaintiff with safe housing, ADS acted under color of state law while conducting construction work at the prison, and thus was also obligated to ensure safety to inmates. This allegation is not sufficient to support a § 1983 claim against ADS as ADS was hired by the state to renovate certain areas of the prison, not to ensure the provision of any constitutionally required housing. The burden of ensuring protection of a prisoners constitutional right to be free from cruel and unusual punishment during on-site construction remains with state defendants, who, in this case, ultimately held the power to either relocate prisoners or to ensure that appropriate fire safety equipment remained operational. This burden was in no way assumed by ADS during on-site construction of the prison by virtue of their employment or contractual relationship with the state.

Second, plaintiff alleges that ADS was performing functions traditionally the exclusive prerogative of the state. Plaintiff states that prison repair and fire safety provision are exclusive functions of the state and that by performing these functions ADS became a state actor. However, a private entity becomes a state actor for purposes of § 1983 only "when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson,* 454 U.S. 312, 317, 102 S.Ct. 445, 70 L.Ed.2d 509

(1981) (*quoting United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Thus, the mere allegation that a defendant' work was by public contract or for public benefit does not show they were performing under the color of state law. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Construction work, whether to improve a state correctional facility or any other type of building, is certainly not a function traditionally restricted to state authorities.

■ Finally, plaintiff argues that, because state officials directed, controlled and encouraged the actions of ADS, ADS became a state actor. Plaintiff has established that ADS was hired by the state to complete construction work in accordance with state specifications. However, a business relationship alone is insufficient to show that ADS acted under color of state law as to the allegations of deliberate indifference to plaintiff's constitutional rights. Beyond this typical employment relationship, plaintiff has not suggested control or coercion on the part of the state to establish the required nexus between state and private actor.

Therefore, the court concludes that plaintiff's second amended complaint fails to establish that ADS acted under color of state law and on that basis dismisses the § 1983 claim against it.

## CONCLUSION

For the foregoing reasons, state defendants' motion to dismiss is denied. ADS' motion to dismiss the § 1983 claim against it is granted.

**ORDERED:** The state defendants' motion to dismiss plaintiff's § 1983 claim pursuant to Rule 12(b)(6) is denied. ADS' motion to dismiss plaintiff's § 1983 claim pursuant to Rule 12(b)(6) is granted.