# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2700

_____

Cody Davis,                                   *
                                              *
      Plaintiff - Appellant,          *
                                              *    Appeal from the United States
    v.                                  *    District Court for the Western
                                              *    District of Missouri.
Oregon County, Missouri; County               *
Sheriff, Tim Ward,                            *
                                              *
      Defendants - Appellees,         *
                                              *
Oregon County Sheriff's Department,           *
                                              *
      Defendant.                      *

_____

Submitted: March 10, 2010
Filed: June 10, 2010

_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

      Cody Davis appeals the district court's[1] grant of summary judgment in favor of
Sheriff Tim Ward, the Oregon County Sheriff's Department, and Oregon County.
Davis, a pretrial detainee at the Oregon County jail, brought suit under 42 U.S.C.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western
District of Missouri.

§ 1983 and various state law authority asserting the defendants violated his rights in failing to ensure his safety after a fire broke out at the jail.  The district court granted summary judgment in favor of the defendants.  On appeal, Davis contends there are remaining issues of fact as to whether the inmates had access to incendiary materials, whether the jail staff was adequately trained to respond to fires, and whether the jail was equipped with appropriate fire-safety devices.  We affirm the district court.

I.

On September 6, 2007, a fire broke out in the county jail in Oregon County, Missouri, where Cody Davis was being held as a pretrial detainee.  The county jail is located in the Oregon County courthouse, which consists of three floors and a basement.  Upon entering the main jail access corridor, there is one door leading to the north jail cell and one door leading to the south jail cell.  At the time of the fire, four detainees, including Davis, were held in the south cell of the jail.  Two other detainees were held in the north cell.

The Oregon County Sheriff's Department utilizes a dispatcher to act as a detention officer to guard pretrial detainees and inmates at the jail.  As part of their duties, dispatchers conduct periodic jail checks.  Before beginning a jail check, dispatchers announce "10-6" on the department radio to indicate to all officers who may be listening that he or she is away from the station to perform a jail check.  Upon the conclusion of the check, dispatchers announce "10-8" on the radio to indicate the officer has concluded the check and is back at the station.

On the date of the fire, Deputy Wendell Stevens was on duty as a dispatcher and jailer for the Sheriff's Department.  He conducted a jail check at approximately 9:20 p.m. and observed the four detainees in the north end of the south cell.  Approximately ten minutes later, Deputy Stevens announced on the radio he had concluded the check.  Shortly thereafter, Deputy Stevens announced "10-6" to indicate he was performing

another jail check. Tim Ward, Sheriff of Oregon County, was listening to radio traffic at the time and believed there could be trouble because of the close proximity in jail checks. Deputy Stevens subsequently announced the jail was on fire.

Chief Deputy Eric King, who was also listening to the radio, arrived within a few minutes of learning of the fire. He was unable to enter the jail due to the volume of smoke and he opened a window and started a fan in an attempt to provide ventilation. After securing a self-contained breathing apparatus, Chief Deputy King entered the jail and escorted the two detainees out of the north cell into the hallway. He proceeded to the south cell, along with firefighters from the city of Alton, Missouri. Chief Deputy King found inmate Robert Huff lying unconscious in front of the toilet and the firefighters transported Huff into the hallway. After further searching, Chief Deputy King discovered Davis lying near an overturned bunk. The firefighters removed Davis from the cell, along with the other two detainees.

Upon his arrival at the jail, Sheriff Ward observed thick black smoke emanating from the jail. Sheriff Ward initially entered the jail without a self-contained breathing apparatus to assist Chief Deputy King in removing detainees from the cell. After making contact with Chief Deputy King, Sheriff Ward left to retrieve a ladder and broke two windows to provide additional ventilation. He then returned to the jail to assist in the removal of the detainees from the cell.

The parties dispute how the fire was started. Davis asserts there was no evidence as to the cause of the fire. The district court found the fire was set as the defendants alleged–by inmates intentionally igniting paper, Styrofoam cups, and a mattress in the corner near the south room of the south cell. In support of their assertions before the district court, the defendants provided a report from Kuticka Fire Investigations concluding the fire was caused by the intentional piling of combustible items in the south cell and the intentional igniting of these items. The defendants also provided an expert report from Captain Richard Ramage concluding Sheriff Ward

-3-

operated the jail under reasonable and safe conditions, in addition to an affidavit from an architect stating the jail did not violate any established building codes. The defendants also noted the electricity and water were still operable after the fire. They hypothesized the fire was an attempted escape by the inmates, in part because a metal bar had been broken out of the wall where it was affixed in concrete.

The parties appear to be in general agreement about the fire equipment on hand at the Sheriff's Department at the time of the fire. Between the dispatcher's station and the jail, there are five fire extinguishers at various locations. There is also a smoke detector above the door that leads to the main jail corridor and another smoke detector located outside the main jail corridor. No other fire safety equipment existed in the jail, such as oxygen tanks, operable fire control sprinklers, or other equipment.[2]

On September 1, 2007, five days before the fire, the Sheriff's Department received information from the Alton Police Department regarding contraband being smuggled into the jail. Inmates had been observed lowering a rope made out of tied together sheets out the window to the ground to receive contraband. Davis was in the south cell at the time the Sheriff's Department learned of these activities. Pursuant to the information, the Sheriff's Department searched the jail and discovered several items of contraband, including a rope connected to a toilet plunger handle, two metal pieces of wire made into "shanks," pills, lighters, cigarettes, matches, and other paraphernalia. Davis asserts inmates frequently used some of these items to smoke cigarettes and other items in the jail. He based his assertions in part on his previous

---

[2]Captain Ramage's report indicates the jail maintained two portable air packs to be worn in the event of an emergency. The record is unclear as to whether these are the same breathing units worn by the officers upon entering the jail after the fire started. However, Davis appears to dispute that any oxygen tanks were available in the jail or the sheriff's department, relying on statements made by Deputy Stevens in his deposition that he was not aware of any oxygen tanks or other equipment in the jail. Viewing the evidence in the light most favorable to Davis, we assume for purposes of our discussion that no oxygen tanks were available in the jail.

six months of incarceration between 2006 and 2008. He also alleged inmates were supplied cigarettes by Tom Lamb, a Sheriff's Department jailer who retired on December 7, 2006. After the September 1, 2007 search, the jail staff closed a window in the cell area to prevent more contraband from being brought into the jail.

In his complaint, Davis asserted eleven counts alleging various violations of federal and state law relating to the defendants' failure to protect, reckless indifference and/or gross negligence, failure to use adequate procedures, failure to maintain the jail in proper condition, negligence, and cruel and unusual punishment under the Eighth Amendment. The district court granted summary judgment on Davis's claims under section 1983 and the Eighth Amendment after concluding he could not meet the deliberate indifference standard. The district court also granted summary judgment on Davis's remaining common law negligence claims after concluding the defendants were immune from liability for negligence. Davis timely appeals.

## II.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Rand Corp. v. Yer Song Moua, 559 F.3d 842, 845 (8th Cir. 2009). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### A. Section 1983 and Constitutional Claims

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. A prisoner's conditions of confinement, including the safety

measures taken to protect prisoners, are subject to scrutiny under the Eighth Amendment. Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007). Here, Davis was a pretrial detainee at the time of the alleged violation, and thus his section 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment. Id. "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Id.

The Eighth Amendment standard for conditions of confinement is whether the defendants acted with deliberate indifference. Nelson v. Corr. Med. Servs., 583 F.3d 522, 528 (8th Cir. 2009) (en banc). A prison official is deliberately indifferent if he "knows of and disregards" a substantial risk to an inmate's safety. Id. There is both an objective component and a subjective component to a claim of deliberate indifference, which questions: (1) whether a substantial risk to the inmate's safety existed, and (2) whether the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it. Id. at 529. "The subjective component requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference." Norman v. Schuetzle, 585 F.3d 1097, 1104 (8th Cir. 2009). An official's negligence alone is insufficient to meet the subjective component because "the official must recklessly disregard a known, excessive risk of serious harm to the inmate." Id. In this case, Davis essentially focuses on three areas where he alleges the defendants were aware of a substantial risk to his safety and disregarded the risk: (1) the jail's smoking policy, (2) the jail's fire-safety equipment, and (3) the emergency training provided to the officers. We will address each of these areas in turn.

### 1. The Jail's Smoking Policy

First, although Davis concedes the jail had an anti-smoking policy in effect, he alleges the policy was disregarded by the officers, who knew inmates were using

matches and lighters to smoke cigarettes and other items. He also asserts Tom Lamb, a former jailer with the Sheriff's Department, supplied cigarettes to inmates. Moreover, he contends the district court's finding "smoking indoors does not create an unreasonable risk of fire" was unsupported by any evidence.

We reject Davis's arguments regarding the jail's smoking policy. First, Davis concedes the jail had an anti-smoking policy in effect at all relevant times. Such a policy demonstrates the prison officials' actions in dealing with fire hazards. Standish v. Bommel, 82 F.3d 190, 192 (8th Cir. 1996) (per curiam) (holding there was no deliberate indifference where "prison officials had taken action to deal with fire hazards, for example, by prohibiting smoking in [the housing unit]."). Davis's assertions regarding Lamb are of little relevance because Lamb retired nine months before the fire occurred and was not involved in the events of this case.

Similarly, Davis's allegations regarding the other officers' disregard for the smoking policy is contradicted by the undisputed facts in the record demonstrating the officers' sweeps for contraband as recently as five days before the fire. During the September 1, 2007, search, the officers took preventative measures to inhibit the flow of lighters, matches, cigarettes, and other items into the jail, such as confiscating all current contraband and closing the window where the inmates were receiving the contraband. In light of these recent measures taken by the officers, they cannot be said to have failed to reasonably respond to a substantial risk to Davis's safety. See Young v. Selk, 508 F.3d 868, 873 (8th Cir. 2007) ("An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it.") (citing Farmer v. Brennan, 511 U.S. 825, 844-45 (1994)).

Further, while the parties dispute the cause of the fire,[3] we conclude this issue is unnecessary to resolve in light of the officers' preventative measures discussed above. "In prison conditions claims, which include threats to an inmate's health and safety, the subjective inquiry is whether the prison officials were deliberately indifferent to a serious risk of harm to the inmate." Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). Even if the fire was caused by other inmates' smoking, as Davis presumably infers, the anti-smoking policy and the officers' actions in curbing the use of contraband demonstrate no deliberate indifference to a substantial risk to Davis's safety. Similarly, we need not decide whether smoking indoors creates an unreasonable risk of fire because, even if it did, the officers' contraband sweeps and anti-smoking policy would have been a reasonable response to such a risk. Accordingly, the district court was correct in rejecting Davis's argument regarding the jail's smoking policy.

## 2. The Fire and Safety Equipment in the Jail

Next, Davis contends there was a substantial risk to his safety in the jail's lack of fire and safety equipment. Notably, the jail's fire sprinkler system was painted over and inoperable. Davis also asserts the jail had no oxygen tanks or other fire safety equipment, except for the fire extinguishers and smoke detectors. Moreover, he

---

[3]At summary judgment, while we view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Before the district court, the defendants provided evidence demonstrating the cause of the fire, including a fire investigation report, an expert report detailing the safety of the jail, and an affidavit establishing the jail's compliance with building codes. Davis, as the nonmoving party, must then demonstrate "specific facts showing that there is a genuine issue for trial." Id. at 587. While his conclusory denial of the evidence showing the cause of the fire likely fails to meet this standard, it is not necessary to decide this issue in light of the officers' preventative measures.

claims the inmates were left without supervision at meal times when the officer on duty left to get dinner for the inmates. He asserts the district court did not acknowledge or analyze the jail's lack of equipment and insufficient facilities.

This case is very similar to Standish v. Bommel, 82 F.3d 190 (8th Cir. 1996) (per curiam). In Standish, an inmate filed a section 1983 action alleging the prison officials violated his Eighth Amendment rights due to the nature of his confinement. Id. at 191. The inmate asserted the defendants were deliberately indifferent to the risk of fire in the jail because the jail "had no smoke detectors or water sprinklers, was inadequately ventilated, and lacked sufficient emergency procedures." Id. This court first concluded the deliberate indifference standard applies to prison conditions affecting fire safety. Id. Applying this standard to the facts of the case, the court concluded the following:

> After careful review of the record, we conclude that Standish failed to make a sufficient showing that defendants were deliberately indifferent to serious risks of fire safety to withstand defendants' motion for summary judgment. The evidence showed that the only recent fires started when inmates set fire to mattresses or bedding; that neither Standish nor anyone else had been injured by smoke inhalation or fire; and that prison officials had taken action to deal with fire hazards, for example, by prohibiting smoking in HU 5C. Thus, Standish's allegations did not rise above mere negligence.

Id. at 192. As a result, the court affirmed the district court's grant of summary judgment. Id.

As an initial matter, we recognize Standish is a per curiam opinion with a limited discussion of facts. However, we find its reasoning persuasive. Davis's claims mirror those set forth by the inmate in Standish. The officers in each case took action to deal with fire hazards by prohibiting smoking. Similarly, the facilities in each case lacked operable sprinklers and the officers were alleged to have a lack of emergency

training. Moreover, the cause of the fire in each case appears to be attributable to another inmate lighting a mattress on fire. Davis's case is distinguishable in part because he appeared to suffer some injury due to the smoke inhalation. However, other facts in this case are more favorable than those in Standish – the jail here had operable smoke detectors and the officers conducted protective sweeps for contraband just five days before the fire took place. Under these circumstances, Davis presents no sufficient reason to depart from the reasoning in Standish. The jail's inoperable sprinklers and lack of extra fire equipment such as oxygen tanks do not, standing alone, amount to deliberate indifference in light of the officers' actions in searching for contraband, as well as the fire extinguishers and smoke detectors that were present at the time of the fire. As a result, we conclude the district court was correct in granting summary judgment on Davis's claims relating to the fire and safety equipment in the jail.

### 3. The Emergency Training Provided to Staff

Finally, Davis contends the jail staff was inadequately trained to handle emergency situations such as the fire. According to Davis, Sheriff Ward did not conduct fire drills with his staff, nor did the staff receive any other emergency training. Davis again claims the district court's failure to acknowledge this issue was improper.

Standish is again instructive on this issue. As noted above, the inmate in Standish asserted the jail lacked sufficient emergency procedures. Id. at 191. The court did not hold this fact to be dispositive of the deliberate indifference inquiry. Id. at 192. Even if Davis is correct and Sheriff Ward should have engaged his officers in more exhaustive emergency training, this failure does not constitute deliberate indifference. Jackson v. Everett, 140 F.3d 1149, 1153 (8th Cir. 1998) ("[The defendant's] failure to take additional security measures, even if arguably negligent, cannot constitute reckless disregard of a known risk.").

In support of his argument, Davis cites <u>White v. Cooper</u>, 55 F.Supp.2d 848, 858 (N.D. Ill. 1999), which held the "defendants knew that consciously disregarding a non-operational fire safety and prevention system in a state prison . . . would violate an inmate's most basic and established constitutional rights." Davis omits the full quote from <u>White</u>, however, which states the defendants' disregard of the non-operational system "*and* failing to free a man from his burning prison cell would violate an inmates most basic and established constitutional rights." <u>Id.</u> (emphasis added). In this case, not only were there operable smoke detectors, unlike <u>White</u>, but it is undisputed that the officers reacted to remove the inmates from the jail cells after they discovered the fire. In this sense, even if Davis is correct that the officers' lack of training and the jail's lack of fire safety systems presented a substantial risk, the officers' subsequent conduct demonstrates they did not disregard the risk. <u>Gregoire v. Class</u>, 236 F.3d 413, 417 (8th Cir. 2000) ("Lastly, even if an official knows of a risk, he is not liable for a subsequent injury if he responded reasonably to the known risk.") (citing <u>Farmer</u>, 511 U.S. at 844).

The other cases Davis relies upon are also distinguishable. In <u>Women Prisoners v. District of Columbia</u>, 877 F.Supp. 634 (D.D.C. 1994), the court found the living conditions presented a constitutional violation because the dormitories were heavily overcrowded, could not contain fire within any room, only contained one unlocked fire exit, and had no fire alarm system or sprinkler system. In <u>Carty v. Farrelly</u>, 957 F.Supp. 727, 737 (D. V.I.), the court determined the fire safety provisions did not withstand Eighth Amendment scrutiny because the cell locking devices, manual alarm systems, smoke dampers, and heat detectors were all inoperable, "which together pose[d] a security risk during a fire emergency."

While some of the same conditions might be said to exist in Oregon County jail, such as the lack of an operable sprinkler system, these cases are distinguishable because they tend to represent the outer bounds of decency. In <u>Hadix v. Johnson</u>, 367 F.3d 513 (6th Cir. 2004), the Sixth Circuit Court of Appeals conducted a review of

-11-

Women Prisoners, Carty, and a number of other cases to determine which cases found constitutional violations and which cases did not. Hadix relied on Helling v. McKinney, 509 U.S. 25, 36 (1993), a Supreme Court case holding an analysis of whether the conditions of confinement violate the Eighth Amendment "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."

In this case, the conditions at the Oregon County jail were not so dangerous as to violate contemporary standards of decency in comparison with Women Prisoners and Carty. The facilities maintained operable fire extinguishers and smoke detectors and the officers conducted sweeps for contraband and established an anti-smoking policy, as noted above. Moreover, there is no suggestion of overcrowding of inmates, lack of fire exits, inoperable cell locking devices, or any of the other conditions present in Women Prisoners and Carty. Under these circumstances, we do not find the reasoning of these cases to be analogous and we affirm the district court's grant of summary judgment on Davis's section 1983 and constitutional claims.

B.    The Negligence Claims Against the Defendants

Aside from his section 1983 and constitutional claims, Davis asserts a number of negligence claims against the defendants. First, he alleges negligence against the County because of the condition of the jail. Under Missouri law, public entities such as Oregon County are afforded sovereign immunity from tort actions. Mo. Rev. Stat. § 537.600.1. However, Davis contends Oregon County waived its immunity due to the dangerous condition of the jail, which is excepted from immunity. Mo. Rev. Stat. § 537.600.1(2). The district court concluded the County had not waived its sovereign immunity pursuant to state law because the dangerous condition of property waiver does not apply when prisoners commit intentional acts the plaintiff claims the prison should have protected against.

-12-

The Missouri Supreme Court has made clear "a plaintiff must allege more than that a public entity's property in some remote way presaged the commission of a tort by another party." Kanagawa v. State By and Through Freeman, 685 S.W.2d 831, 835 (Mo. banc 1985). In Kanagawa, the Missouri Supreme Court held the plaintiff's allegations were deficient to show a defect, either through construction or maintenance, in the condition of a prison. Id. Kanagawa was later reversed in part in Alexander v. State, 756 S.W.2d 539, 542 (Mo. banc 1988), which concerned a ladder placed by an agent of the state that resulted in injury to the plaintiff. Alexander slightly broadened the scope of the dangerous condition exception by concluding an object placed by an agent of the state may qualify as a dangerous condition even though it was not part of the physical construction or maintenance of the property itself. 756 S.W.2d at 542. However, the remand in Alexander did not appear to completely foreclose the dangerous condition requirement because the court noted "the condition here was dangerous because its existence, without intervention by third parties, posed a physical threat to plaintiff." Id. In other words, in situations involving intervening acts by third parties not connected to the state, the exception to immunity still would not apply. Cain v. Mo. Highways & Transp. Com'n, 239 S.W.3d 590, 596 (Mo. banc 2007).

In order to state a claim under the dangerous condition exception, Davis must show "1) a dangerous condition of public property, 2) that the injury directly resulted from the dangerous condition, 3) that the dangerous condition created a reasonably foreseeable risk of the kind of harm incurred, and 4) that a public employee negligently created the condition, or the public entity had actual or constructive notice of the condition." State ex rel. Mo. Highway & Transp. Comm'n v. Dierker, 961 S.W.2d 58, 60 (Mo. banc 1998). Although Davis does not believe the cause of the fire is established, it is doubtful whether he has met his burden on summary judgment, as discussed above. Even if the cause of the fire is unknown, Davis fails to establish a dangerous condition of the jail caused the fire or that any such condition created a reasonably foreseeable risk of the harm incurred. Davis's argument suggests we view

-13-

the lack of an operable sprinkler system and oxygen equipment in isolation in order to satisfy the dangerous condition exception. However, as we discussed above, the condition of the property, as a whole, did not pose a threat to Davis in light of the multiple fire extinguishers and smoke detectors present at the jail, which were sufficient to meet the inmates' safety needs in this case. Accordingly, the dangerous condition exception does not apply to bar the County's immunity.

Davis also alleges negligence per se against all defendants because he claims the jail did not comply with local, state, and/or federal building codes. However, he fails to set forth any violations of any building codes. He has also failed to present any evidence showing an issue of material fact because he does not meet his burden on summary judgment by disputing the affidavits set forth by the defendants showing there were no applicable building codes in existence for the jail to violate. Zenith Radio Corp., 475 U.S. at 586-87.

Finally, Davis alleges negligence against Sheriff Ward and Oregon County for creating a dangerous condition by allowing the inmates to be housed in an unsafe jail and maintaining insufficient safety procedures. The County is immune pursuant to Missouri law, as discussed above. Public officials are also afforded immunity for tasks undertaken in relation to the officials' performance of discretionary duties. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008). Whether an act is discretionary or ministerial is a case-by-case determination based on: "(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." Id.

Here, the district court correctly granted immunity to Sheriff Ward. The safety measures suggested by Davis were not required under the law, as discussed above, and thus they were not ministerial functions. Boever v. Special Sch. Dist. of St. Louis County, 296 S.W.3d 487, 492 (Mo. App. E.D. 2009) ("A ministerial function is one

of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.") (citation and internal quotations omitted). Rather, determinations such as whether to conduct fire drills, etc., are more discretionary in nature because they "require[] the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." Id. Under these circumstances, Sheriff Ward's determinations were discretionary in nature and he is entitled to official immunity on Davis's negligence claims.

For the foregoing reasons, we affirm the judgment of the district court.

_____