# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2030

_____

| | | |
|---|---|---|
| Salaad Mahamed, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Bruce M. Anderson, Sheriff Sherburne | * | District of Minnesota. |
| County; Sgt. Tom Zerwas, Sheriff | * | |
| Sherburne County, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Sgt. Steve Pedersen, Sherburne | * | |
| County Jail, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: May 11, 2010
Filed: July 30, 2010

_____

Before RILEY, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

RILEY, Chief Judge.

Salaad Mahamed filed a complaint against two Sherburne County Jail officers, Tom Zerwas and Steve Pedersen, and the Sherburne County Sheriff, Bruce M. Anderson, alleging various civil rights violations under 42 U.S.C. § 1983. Thereafter,

the defendants filed a motion for summary judgment. The district court[1] granted the motion as to Zerwas and Anderson, but denied the motion, in part, as to Pedersen, preserving an excessive force claim. Pedersen appeals, asserting qualified immunity. We dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

Mahamed was incarcerated at the Sherburne County Jail for allegedly violating his immigration status. During his time at the jail, Mahamed had a series of disagreements and altercations with jail staff, repeatedly filed grievances voicing his complaints, and spent a significant amount of time in segregation. One such incident occurred on or about October 10, 2007, while Mahamed was in segregation. The facts surrounding the incident are in dispute, but we construe the facts in the light most favorable to Mahamed. See Davis v. Oregon County, Mo., 607 F.3d 543, 548 (8th Cir. 2010).

At the Sherburne County Jail, inmates in "special housing," or "segregation," are only permitted to be out of their cells for one hour each day. On October 10, 2007, Mahamed intended to spend his time out of his cell watching television. Inmates are not allowed to change the channel on the television, so Mahamed asked a guard to change the channel, but the guard refused. Mahamed protested, and the guard ordered Mahamed to "lockdown."[2] Mahamed became upset and told the guard he thought he was being treated unfairly.

Mahamed returned to his cell, where he felt "angry," "frustrated," and "powerless," and he began kicking the door to his cell. Mahamed began to argue with

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]When a prisoner is ordered to lockdown, he is required to return to his cell and the door is locked.

jail staff (one male and four female guards). The guards called Pedersen into the unit. Pedersen ordered Mahamed to lie on the ground, and Mahamed responded by lying on his back, while yelling and crying, "[W]hat did I do; what did I do; this is not fair; I'm human; how long are you going to keep torturing me." "Out of sheer frustration," Mahamed shouted, "[Y]ou want to shoot me, go ahead!" Pedersen ordered Mahamed to roll over onto his stomach, but before Mahamed could fully turn over, Pedersen tased Mahamed in his genital area. One of the probes struck Mahamed in the testicle, and the other probe struck Mahamed in the hand. Mahamed passed out and woke up in a wheel chair.

In his complaint, Mahamed declared, "at [no] time was I ever a threat to [Sergeant] Pedersen and at [no] time was there a need to tase me while laying on the floor." Mahamed also maintains that he has seen numerous medical providers for the injuries he sustained while incarcerated. Specifically, Mahamed alleges he has "trouble with incontinence and impotence as a result of being tased in [his] testicle," it is painful for him to urinate, he has nerve damage in two of his fingers, and he has seen a urologist, a chiropractor, and a pain management and rehabilitation physician and undergone "extensive psychological therapy."

Mahamed filed a complaint in the district court alleging, as relevant here, Pedersen used excessive force when he discharged his taser and struck Mahamed in the testicle and hand. The district court denied Pedersen's motion for summary judgment on the excessive force claim. The district court declared, "Viewing the facts in the light most favorable to Mahamed, he was uncooperative but not dangerous or threatening, and therefore the use of a taser violated his clearly established constitutional right to be free from excessive force."

Pedersen now appeals, claiming he is entitled to qualified immunity because he did not violate Mahamed's constitutional rights, and even if he did, the law was not clearly established at the time of the incident.

## II.    DISCUSSION

"Our jurisdiction over an interlocutory appeal from a denial of qualified immunity depends upon the issues that the appeal raises." Thomas v. Talley, 251 F.3d 743, 746 (8th Cir. 2001). "We have jurisdiction over an order denying summary judgment based on qualified immunity when the issue on appeal 'turns on a legal determination [of] whether certain facts show a violation of clearly established law.'" Id. (quoting Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 2000)). However, "[a] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 319-20 (1995). "Even if a defendant frames an issue in terms of qualified immunity, we should determine whether he is simply arguing that the plaintiff offered insufficient evidence to create a material fact." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008).

On appeal, Pedersen frames his argument as a legal one, claiming he did not violate Mahamed's clearly established constitutional rights. Fundamentally, however, Pedersen's argument depends on our resolution of numerous factual issues in his favor. Pedersen paints a different picture of the events which took place immediately preceding and during the incident than those portrayed by Mahamed and accepted by the district court. Pedersen reports a corrections officer informed him Mahamed was "out of control" and "causing a disturbance." When Pedersen arrived at Mahamed's unit, Pedersen claims he could hear Mahamed yelling obscenities. Pedersen alleges he looked in Mahamed's cell, and observed Mahamed throwing things. Pedersen maintains Mahamed incited the other inmates, causing them to yell and encourage Mahamed to be unruly. Pedersen then decided to diffuse the situation by moving Mahamed to another unit. Pedersen claims he took out his taser because "Mahamed was acting erratically." Pedersen spoke to Mahamed through his cell door and asked him to lie on the floor, but Mahamed lay on his back with his legs toward the door, compromising the safety of the corrections officers. Pedersen claims he entered the

cell and pointed his taser at Mahamed's chest, but "Mahamed's angry behavior continued unabated." Pedersen contends Mahamed continued to yell, and due to "Mahamed's level of agitation, Pedersen concluded that using a [t]aser to effectuate control over Mahamed would be safer for all concerned than wrestling with him on the hard concrete floor of the cell." Pedersen asserts he aimed the taser at Mahamed's chest, but the probes missed and hit Mahamed in the right hand and genital area. Thus, Pedersen maintains he did not intend to strike Mahamed in the genital area. Pedersen also contends, "Mahamed has not submitted probative evidence to prove that he was injured by the force used," and "Pedersen used the [t]aser in a good faith effort to restore order and not to maliciously and sadistically punish Mahamed." It is based upon these facts Pedersen claims he did not violate Mahamed's clearly established constitutional rights.

Many of Pedersen's factual assertions are in conflict with Mahamed's statement of the facts, which, at the summary judgment stage, we must take as true. The factual controversies pertaining to Mahamed's conduct, Pedersen's response, Pedersen's intent, and Mahamed's injuries, are the type of issues best left for trial. See Johnson, 515 U.S. at 316-17. The Supreme Court has held, "determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." Behrens v. Pelletier, 516 U.S. 299, 313 (1996) (citing Johnson, 515 U.S. at 313-18). Thus, even though Pedersen seeks to frame the issue in terms of qualified immunity, he asks this court to find qualified immunity on facts contrary to those Mahamed presented to the district court. We do not have jurisdiction or the capability to decide these factual disputes. See White, 519 F.3d at 812-13 ("This court does not have jurisdiction to consider an interlocutory summary-judgment qualified-immunity appeal if 'at the heart of th[e] argument is a dispute of fact.'" (quoting Pace v. City of Des Moines, 201 F.3d 1050, 1053 (8th Cir. 2000))). Because we lack jurisdiction to consider Pedersen's qualified immunity appeal, we do not address the qualified immunity and related constitutional issues.

## III.   CONCLUSION

We dismiss the appeal for lack of jurisdiction, and we remand the case to the district court for further proceedings.

_____