# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1473

_____

Jack Daniel Reynolds,             *
                                         *
            Appellant,            *
                                         *    Appeal from the United States
           v.                        *    District Court for the
                                         *    Western District of Missouri.
Dave Dormire, Warden, in individual   *
and official capacity; CO1 King; CO1   *
Bommorito; Scott Adams; John Doe I;   *
John Doe II; Jane Doe I; and Jane Doe   *
II, in individual capacities,          *
                                         *
           Appellees.            *

_____

Submitted: October 19, 2010
Filed: February 18, 2011

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Missouri inmate Jack Reynolds appeals pro se from the district court's preservice dismissal of his complaint for failure to state a claim. 28 U.S.C. § 1915A. Reynolds brought his claims under 42 U.S.C. § 1983, pleading various Eighth Amendment violations. In his complaint, Reynolds alleged that two Northeast Correctional Center correctional officers ("COs") refused to remove his restraints during a day-long journey to Jefferson City Correctional Center ("JCCC") for a

medical appointment and refused his requests to use the restroom without restraints. He also alleged that five JCCC COs were deliberately indifferent to his safety by parking the prison van too close to a sally port pit[1] and by failing to help him exit the van, which resulted in his falling approximately five feet into the pit and sustaining injuries. Finally, Reynolds claimed that Dave Dormire, the warden of JCCC, violated his Eighth Amendment rights by failing to eliminate the obviously hazardous nature of the sally port pit and failing to better train his subordinates.[2]

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1948 (2009). We review the district court's dismissal for failure to state a claim *de novo*, accepting as true all of the factual allegations contained in the complaint and affording the plaintiff all reasonable inferences that can be drawn from those allegations. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). Additionally, while "[o]rdinarily, only the facts alleged in the complaint are considered in [determining whether it states a claim,] . . . materials attached to the complaint as exhibits may be considered in

---

[1]A sally port serves as a secure entryway into the prison. According to Reynolds, the "sally port pit" is a trench designed to facilitate visual inspections of vehicle undercarriages.

[2] Reynolds's pro se notice of appeal designated only the district court order dismissing his complaint, but in his brief he also addresses the magistrate judge's order denying his motion for appointment of counsel. As appellees address both orders in their brief and it seems no prejudice would result, we accept the parties' invitation to review the magistrate judge's order, *see Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001), and hold that the court did not abuse its discretion in denying Reynolds's motion for appointment of counsel, *see Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) (affirming that trial court has broad discretion in deciding whether to appoint counsel to indigent civil litigants and discussing factors).

construing the sufficiency of the complaint." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Hughes v. Banks*, 290 Fed App'x 960, 961 n.1 (8th Cir. 2008) (unpublished per curiam); Fed. R. Civ. P. 10(c).

"The Eighth Amendment standard for conditions of confinement is whether the defendants acted with deliberate indifference." *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010) (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (en banc)). A prison official is deliberately indifferent if he "knows of and disregards" a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "There is both an objective component and a subjective component to a claim of deliberate indifference . . . : (1) whether a substantial risk to the inmate's safety existed, and (2) whether the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it." *Davis*, 607 F.3d at 548. "The subjective component requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference." *Id.* at 548-49 (quoting *Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009)). "[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)) (alteration in the original and internal quotation marks omitted).

We conclude that Reynolds failed to state an Eighth Amendment claim with regard to his allegations against the two Northeast Correctional Center COs. His pleadings are devoid of any allegation suggesting that the two COs acted with deliberate indifference to his safety in restraining him throughout the day. Also, to the extent that Reynolds alleged that the restraints prevented him from relieving himself, his complaint acknowledged that he could have used the bathroom, albeit with some difficulty, at any time during his sojourn at JCCC.

As to the Eighth Amendment claims arising from his fall at the sally port, we conclude that Reynolds failed to state a claim against three of the five JCCC COs—John Doe II, Jane Doe I, and Jane Doe II—who, according to Reynolds's complaint, violated his constitutional rights simply by being on duty in the vicinity of his accident at the time he injured himself. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (holding that, in order for a claim to be cognizable under § 1983, plaintiff must allege that the defendant "was personally involved in or had direct responsibility for incidents that injured him").

Reynolds's claims against the remaining two JCCC COs, defendants King and John Doe I, are a different matter, however. King was tasked with transporting prisoners within JCCC and, according to Reynolds's complaint, parked the van too close to the sally port pit. John Doe I was the CO on duty at the sally port supervising the prisoners exit the van when Reynolds fell. As an initial matter, there appears to be no dispute that Reynolds made sufficient factual allegations that a substantial risk to his safety existed. *See* Compl. ¶¶ 25-31, 35. The only question is whether his pleadings could support an inference that the defendants manifested deliberate indifference to that risk. Although "naked assertion[s]" that King and John Doe I "knew . . . that in all probability plaintiff would back-up and fall" do not state a claim to relief that is plausible on its face, *see Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), Reynolds's complaint and attached copies of grievances he had submitted contain sufficient allegations to withstand dismissal. The complaint alleged that King parked "approximately three feet" from the edge of the sally port pit. The complaint then alleged that Reynolds, his legs shackled and his arms secured by a "black box,"[3] was obliged to back out of the van, using a stool to descend from the vehicle. As Reynolds exited the van, John Doe I

---

[3] The "black box" is a restraint device that "is applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets." *Moody v. Proctor*, 986 F.2d 239, 240 n.3 (8th Cir. 1993).

allegedly "started backing away" rather than assisting him, at which point Reynolds lost his footing and fell into the pit.

While such allegations, standing alone, appear to support a finding of mere negligence, Reynolds's complaint also alleged that "[f]urther, investigation will more than likely show that plaintiffs [sic] falling into this pit is not an isolated incident." In his grievance attached to the complaint, Reynolds elaborated that "the JCCC corrections personel [sic] knew about the hazard of this JCCC sally-port pit, as one other person had already, that very same day, fell [sic] into this very same JCCC sally-port pit." Moreover, the grievance also alleged that, immediately following the accident, an unnamed correctional officer said, "I warned you people[] that this would happen, if you parked so close to the sally-port pit." Taking all these allegations as true and drawing all reasonable inferences in the plaintiff's favor, we conclude that Reynolds sufficiently alleged that King and John Doe I were aware of the substantial risk to his safety and that they recklessly disregarded that risk by parking the van too close to the sally port pit (in King's case) and by failing to help Reynolds descend from the van (in John Doe I's case).

Finally, we conclude that the district court properly dismissed Reynolds's claims against JCCC's Warden Dormire. With regard to Reynolds's claim against the warden in his individual capacity, the complaint first alleged that the warden neglected to eliminate or warn of the hazardous conditions at the sally port. It is settled, however, that "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam). And to the extent Reynolds pleaded that Warden Dormire personally failed to rectify the sally port conditions, he made no allegation permitting an inference that the warden himself knew of, but recklessly disregarded, the risk of accident. The claim that the warden inadequately trained his staff also was properly dismissed; as above, Reynolds alleged no facts suggesting that

-5-

the risk of serious harm due to the negligence of the personnel on duty at the sally port was so obvious to the warden that he acted in a deliberately indifferent manner by failing to better train them.

As to Reynolds's claim against the warden in his official capacity, we observe that Reynolds does not contest the district court's determination that equitable remedies are unavailable in this case. Accordingly, the claim against Warden Dormire in his official capacity persists as a claim for damages alone and is thus barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985).[4]

For the foregoing reasons, the order of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

———————————————

[4] Reynolds also challenges the constitutionality of the district court's dismissal of his complaint, arguing that the relevant provision of the Prison Litigation Reform Act violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. We do not agree. The Equal Protection Clause "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 602 (2008) (quoting *Hayes v. Missouri*, 120 U.S. 68, 71-72 (1887)). Here, the district court dismissed Reynolds's complaint for failure to state a claim, and Reynolds has pointed to no class of plaintiffs whose claims in federal court would not be subject to identical scrutiny. *See Sanders v. Sheahan*, 198 F.3d 626, 626 (7th Cir. 1999). Thus, because Reynolds has not shown that *anyone* is treated differently from him, the Equal Protection Clause is not implicated. As his due process challenge appears to rest on the same theory, it is likewise unavailing.